UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

JASMINE NORMAN,

                      Plaintiff,

- against -

NYU LANGONE HEALTH SYSTEM,

                      Defendant.

----------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff, JASMINE NORMAN, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complain of Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to the **Americans with Disabilities Act of 1990**, 42 U.S.C. § 12101, et seq. ("ADA"), the **New York State Human Rights Law**, New York State Executive Law, § 296 ("NYSHRL"), et seq., and the **New York City Human Rights Law**, New York City Administrative Code § 8-107(1), et seq., and seeks damages to redress the injuries Plaintiff suffered as a result of failing to accommodate Plaintiff's disability and being discriminated and retaliated against by her employer solely due to her **perceived and or actual disabilities (allergy to flu shot)**.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. § 12101, et. seq., and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state and city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district in that a substantial part of the events or omissions giving rise

to the claim occurred within the Southern District of the State of New York. 28 U.S.C. §1391(b).

## PROCEDURAL PREREQUISITES

5. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated October 10, 2018 with respect to the herein charges of discrimination. A copy of the Notices is annexed hereto.

7. This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8. That at all times relevant hereto, Plaintiff JASMINE NORMAN ("Plaintiff") is a resident of the State of New Jersey and County of Essex.

9. That at all times relevant hereto, Defendant NYU LANGONE HEALTH SYSTEM ("NYU") is a domestic not-for-profit corporation with a principal place of business 550 First Avenue, New York, New York 10016.

10. That at all times relevant hereto, Plaintiff was an employee of Defendant NYU.

11. Defendant NYU is referred to herein as "NYU."

## MATERIAL FACTS

12. In or around April 2011, Plaintiff began working for Defendant NYU as a "Clinical Database Specialist", earning approximately $85000.00 annually.

13. In or around December 2015, Plaintiff was promoted to Quality Improvement Project Manager, earning approximately $94,238.82 annually.

14. On or about March 23, 2018, Plaintiff was again promoted to Senior Quality Improvement Project Manager, earning approximately $115,000.00 annually, plus a $5,300.00 bonus.

15. Plaintiff's expected annual salary is $115,000.00, plus an approximate bonus of $3,500.00.

16. During the entirety of Plaintiff's employment, she worked with little to no issues.

17. From 2011 until 2017, Plaintiff's Flu Declination Exemption request was repeatedly approved without issue.

18. On or about November 1, 2017, Plaintiff sent an e-mail to Dr. Michael Phillips ("Dr. Phillips"), Chief Hospital Epidemiologist/Director, Infection Prevent & Control/Associate Director for Clinical Services, Division of Infectious Disease, in compliance with responding to the Flu Declination Exemption panel board. Plaintiff asked Dr. Phillips if she could use the same form submitted by Dr. Vinod K. Aggarwal ("Dr. Aggarwal"), Plaintiff's Primary Care Physician ("PCP"). In addition, Plaintiff asked if it was necessary to complete the same form over again, when the indication remains the same.

19. Plaintiff had previously indicated that she experienced a horrible allergic reaction to taking the flu shot in 2001 and had been refusing to take it ever since.

20. On or about November 10, 2017, Plaintiff submitted another new medical exemption form to Defendant NYU, declining the Influenza/Flu Vaccination. This form was completed by Plaintiff's PCP.

21. On or about November 14, 2017, Plaintiff received an e-mail from the Influenza Vaccination Declination Review Board ("IVDRB"), stating that after careful review of Plaintiff's declination request, they are referring Plaintiff to an allergist for a follow up.

22. Almost immediately after receiving the e-mail, Plaintiff responded requesting if the follow-up was mandatory.

23. On or about November 15, 2017, Plaintiff followed up with the IVDRB stating that she did not completely understand the review process and requested a follow-up call to address her

issues and concerns.

24. On or about November 16, 2017, Plaintiff received a response stating that since Plaintiff's PCP indicated that Plaintiff had an allergic reaction to eggs, the next step would to refer Plaintiff to an allergist.

25. Almost immediately after receiving the e-mail, Plaintiff responded requesting if the referral was mandatory and requested a copy of the written policy.

26. On or about December 6, 2017, Plaintiff received an e-mail from the IVDRB, indicating that they were giving Plaintiff a second notice to contact Dr. Amina Abdeldaim ("Dr. Abdeldaim"), IVDRB's Allergist, in order to schedule an appointment.

27. On or about December 7, 2017, Plaintiff e-mailed Dr. Steven Salvati ("Dr. Salvati"), Medical Director, stating:

> Hi Dr. Salvati,
>
> Good morning. I received your "Second Notice" email and with all due respect I have never received a response to my questions below. I have asked on November 14th and again on November 16th and I will ask again today if this referral is mandatory?
>
> I have not been consulted on any additional supporting documentation on my awful experience having received the flu shot years ago. Despite my compliance with submitting documentation from my primary care physician I'm being instructed to report to your facilities for additional testing.
>
> I am aware and have been more than willing to wear a mask throughout the indicated timeframe for the past several years. I am not willing however to subject myself to another similar episode that I encountered years ago while taking a flu shot. To be honest this whole situation is causing me great stress and anxiety. I would very much appreciate a response to my mandatory referral question at your earliest convenience. I was looking online and I was unable to find any supporting written policy. Please advise. Thank you.

28. On or about January 12, 2018, Plaintiff made an appointment, for February 8, 2018, to see

4

Dr. Abdeldaim, the Allergist.

29. On or about January 18, 2018, despite repeated requests for clarifications, Plaintiff received an e-mail indicating that she had until Tuesday, January 23, 2018, to make an appointment with the Allergist, otherwise she would be marked as noncompliant and referred to Human Resources (H.R.).

30. Almost immediately after receiving the e-mail, Plaintiff responded that she had already scheduled the appointment on Friday, January 12, 2018.

31. On or about January 30, 2018, Dr. Abdeldaim reschedule Plaintiff's appointment to March 1, 2018.

32. On or about February 1, 2018, Plaintiff received an e-mail from the IVDRB that her appointment was expedited to February 7, 2018.

33. On February 7, 2018, Plaintiff saw Dr. Abdeldaim, who took a history of Plaintiff's prior reaction to receiving the flu shot in 2001. Dr. Abdeldaim told Plaintiff that she would contact the IVDRB and inquiry as to why they accepted Plaintiff's prior exemptions, as the policy has not changed. Dr. Abdeldaim also indicated that she is supposed to offer Plaintiff a skin test, but as a patient, Plaintiff has the right to refuse the test, as it is injecting a small percentage of the flu shot into Plaintiff's body, for observation. Plaintiff respectfully declined and waited to hear back from Dr. Abdeldaim and the findings of the IVDRB.

34. On or about February 9, 2018, Matthew Farrell ("Mr. Farrell"), Senior Manager for Clinical Quality Improvement & Reporting, informed Plaintiff that he received a phone call from, Derek Forte ("Mr. Forte"), Employee & Labor Relations Manager, of Defendant NYU's H.R., that Plaintiff would be terminated for non-compliance, as result of not receiving the flu shot.

35. At 11:45AM, Mr. Farrell e-mailed Mr. Forte requesting additional information into the decision about Plaintiff's employment. Mr. Forte responded that Plaintiff was non-compliant and would be terminated, if she did not take the flu shot.

36. At approximately 12:54PM, Martha J. Radford, Chief Quality Officer, clearly instructed Mr. Forte to not terminate Plaintiff. Mr. Forte simply responded that Plaintiff was non-compliant and thanked the individuals for their input.

37. At approximately 1:16 PM, Plaintiff received an-email from H.R. stating that they are declining Plaintiff's medical exemption.

38. Mr. Farrell, received a phone call from H.R. and later advised Plaintiff that she would be suspended, with pay, until she came back for a second time to see Dr. Abdeldaim, for the skin test.

39. Dr. Salvati scheduled Plaintiff's second appointment with Dr. Abdeldaim for February 12, 2018.

40. That day, Plaintiff e-mailed Dr. Abdeldaim, indicating:

> Hi Dr. Abdeldaim,
>
> I had an appointment with you this past Wednesday in regards to my flu declination. I was there around 2pm; I'm not sure if you remember but I was wearing the blue-green colored dress and I advised you that I currently work in CQE department. We talked in great detail about my traumatic experience having taken the flu shot before in the past and that I have submitted the same declination documentation from the same primary care physician for the entire length of my employment here at NYU.
>
> I'm not sure yet if you had a chance to discuss/ review my case with the panel but my manager just received a call from HR notifying him of my termination apparently effective today. They did not have any record of your documentation. I called and left you a message on your voicemail. Could you please get back to either myself or my boss as soon as possible; I have included him on this email as well. I can also be reached on my cell# 908-693-0362. Thank you.

6

41. On or about February 12, 2018, Plaintiff attended her appointment with Dr. Abdeldaim and was given a consent form. Plaintiff signed the consent form, indicating that it she was not giving voluntary consent and it was as per her employment instructions.

42. Soon thereafter, Plaintiff was given the skin test and was observed for fifteen (15) minutes.

43. Plaintiff was then given the flu shot. However, Plaintiff began suffering from palpitations and shortness of breath. Plaintiff's $O_2$ stats went down to as low as 88-89 and was given Albuterol treatment and an EPI pen injection.

44. Soon thereafter, the Rapid Response Team responded and immediately transported Plaintiff to the Emergency Room for observation, for approximately three (3) hours.

45. Plaintiff was eventually discharged with a prescription for an EPI pen, for precaution.

46. On or about February 16, 2018, Mr. Farrell filed a Workman's Compensation claim, on behalf of Plaintiff.

47. On or about February 19, 2018, Dr. Aggarwal cleared Plaintiff to return to work, on or about February 20, 2018.

48. On or about February 20, 2018, Plaintiff returned to work and was also required to be seen by Employee Health, at Defendant NYU, for a clearance appointment.

49. Upon information and belief, Plaintiff could have performed all of her job functions with reasonable accommodations.

50. Plaintiff requested reasonable accommodations in order to manager her allergic reaction to the flu shot, in the form of an exemption.

51. Defendants denied Plaintiff a reasonable accommodation for her disability (allergy to flu shot).

52. Defendants failed to engage in an interactive process with Plaintiff in regard to her request

for a reasonable accommodation; instead, choosing to threaten termination immediately upon her insistence that she needed an accommodation.

53. **Defendants' actions and conduct were intentional and intended to harm Plaintiff**.

54. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

55. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

56. Plaintiff's medical condition constituted an impairment that substantially limited one or more of her major life activities within the meaning of § 12102(1)(A) of the ADA, including her breathing.

57. Plaintiff was, and remains, a qualified individual who can perform the essential functions of her employment with or without a reasonable accommodation as defined by § 12111(8) of the ADA.

58. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdiction limits of the Court.

59. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE ADA**

60. Plaintiff repeats, reiterates, and realleges each and every paragraph above as if said

paragraphs were more fully set forth herein at length.

61. Plaintiff claims Defendant NYU violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

62. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

63. Defendant NYU engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disability (allergy to flu shot).

64. As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER THE ADA

65. Plaintiff repeats, reiterates, and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

66. The ADA prohibits retaliation, interference, coercion, or intimidation.

67. 42 U.S.C. § 12203 provides:

   a. Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
   b. Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

68. Defendant NYU violated this section as set forth herein.

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK STATE LAW

69. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70. Executive Law § 296 provides that:

> 1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

71. Defendant engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of her disability (allergy to flu shot).

## AS A FOURTH CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK STATE LAW

72. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

74. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her opposition to the unlawful employment practices of the Defendants.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION<br/>UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

75. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. The Administrative Code of City of NY § 8-107 [1] provides that,

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

77. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her disability (allergy to flu shot).

### AS A SIXTH CAUSE OF ACTION FOR RETALIATION<br/>UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

78. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person **has opposed any practices** forbidden under this chapter. . ."

80. Defendant violated the section cited herein as set forth.

### JURY DEMAND

81. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the **Americans with Disabilities Act of 1990**, 42 U.S.C. § 12101, et seq. ("ADA"), the **New York State Human Rights Law**, New York State Executive Law, § 296 ("NYSHRL"), et seq., and the **New York City Human Rights Law**, New York City Administrative Code § 8-107(1), et seq., in that Defendants discriminated and retaliated against Plaintiff on the basis of her disability (allergy to flu shot);

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated:  New York, New York
           January 3, 2019

**PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC**

By: _____
Marjorie Mesidor, Esq.
Wendy Gildin, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
T: (212) 248 - 7431
F: (212) 901 - 2107
mmesidor@tpglaws.com
wgildin@tpglaws.com



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY  10004-2112
(212) 336-3620
TTY (212) 336-3622

Ms. Jasmine Norman
c/o Marjorie Mesidor, Esq.
PHILLIPS & ASSOCIATES
45 Broadway, Suite 620
New York, NY 10006

RECEIVED OCT 1 2 2018 BY: KG

Re:   EEOC Charge No. 520-2018-04474C
      Norman v. NYU Langone Health System

Dear Ms. Norman:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. The procedures apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

We have evaluated your charge based upon the information you submitted, and have determined that further investigation will unlikely result in a determination that Respondent violated one of the federal laws enforced by the Commission. Therefore, your charge will be dismissed.

Attached is your Dismissal and Notice of Rights.  If you want to pursue this matter further in federal court, your lawsuit must be filed within 90 days of your receipt of the Notice.

Please contact Investigator McClifford Genois at (212) 336-3749 if you have any questions

Sincerely,

_____ for           10/10/8
Kevin J. Berry                   Date
District Director

Enc.

cc: Jasmine Norman
130 Marion Drive
West Orange, NJ 07052

| EEOC Form 161 (11/16) | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION |
|---|---|

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jasmine Norman<br>130 Marion Drive<br>West Orange, NJ 07052 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2018-04474 | McClifford Genois,<br>Investigator | (212) 336-3749 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)  Kevin J. Berry,
District Director

10/10/18
(Date Mailed)

cc: Attn
Director of Human Resources
NYU LANGONE HEALTH SYSTEM
560 First Avenue
New York, NY 10016

Mesidor
PHILLIPS & ASSOCIATES
45 BROADWAY
SUITE 620
New York, NY 10006

INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**</u>

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now include the operation of major bodily functions, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

"Regarded as" coverage:
- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.