hUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

JASMINE NORMAN,

                      Plaintiff,

       -against-                                  Case No. 19-CV-00067 (AT)

NYU LANGONE HEALTH SYSTEM,

                      Defendant.

--------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

JACKSON LEWIS P.C.
*ATTORNEYS FOR DEFENDANT*
58 South Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

Attorneys of Record:
  Roger H. Briton, Esq.
  Kathryn J. Barry, Esq.

## TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ............................................................................... iii-vii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS

    I.      DEFENDANT'S INFLUENZA VACCINE REQUIREMENT ................................... 3

    II.     PLAINTIFF'S EMPLOYMENT AND REACTIONS TO THE FLU VACCINE ........ 5

    III.    PLAINTIFF'S EXEMPTION REQUESTS AND INITIAL REFUSAL
           TO TAKE THE FLUBLOK SKIN TEST ................................................... 6

    IV.    PLAINTIFF IS CLEARED TO TAKE THE FLUBLOK VACCINE AND
           ENCOUNTERS A REACTION ................................................................... 8

ARGUMENT

    I.      SUMMARY JUDGMENT STANDARD ................................................... 10

    II.     PLAINTIFF'S ADA AND NYSHRL FAILURE TO ACCOMMODATE CLAIMS
           MUST BE DISMISSED ........................................................................ 11

        A. Plaintiff Cannot Meet The First Prong Of Her *Prima Facie* Case As She Is Not An
           Individual With A Disability ........................................................... 12

             1.   Plaintiff Is Not An Individual With A Disability Under The ADA ................ 12

                  a.   Plaintiff Cannot Rely On Her Reaction To The FluBlok Vaccine As
                      Evidence That She Was Disabled In November 2017 ............................... 13

                  b.   Plaintiff Was Not Impaired During The Relevant Time Period ................ 14

                  c.   Plaintiff's "Allergy" Did Not Substantially Limit Her Breathing .............. 16

             2.   Plaintiff Was Not Disabled Under The NYSHRL ............................... 17

        B. Plaintiff Cannot Meet The Fourth Prong Of Her *Prima Facie* Case As Defendant
           Offered Her A Plainly Reasonable Accommodation ...................................... 17

             1.   Defendant Did Not Fail To Engage In The Interactive Process ................... 18

             2.   Defendant's Accommodation Was Reasonable ................................... 19

i

III.    PLAINTIFF'S ADA AND NYSHRL DISABILITY DISCRIMINATION CLAIMS
        MUST BE DISMISSED ................................................................................................ 23

        A.  Plaintiff Cannot Establish A *Prima Facie* Case Of Disability
            Discrimination ........................................................................................................ 24

        B.  Defendant Articulated A Legitimate, Non-Discriminatory Business
            Reasons For Its Actions, Which Plaintiff Cannot Rebut As Pretext ...................... 26

IV.     PLAINTIFF'S RETALIATION CLAIMS MUST FAIL ............................................. 26

V.      PLAINTIFF'S NYCHRL CLAIM ALSO MUST BE DISMISSED ........................... 27

VI.     PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS ARE BARRED
        BY THE NEW YORK WORKERS' COMPENSATION LAW ................................. 29

CONCLUSION ...................................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
   239 F.3d 456 (2d Cir. 2001), *cert. denied*, 122 S. Ct. 460 (2001) ..........................................10

*Alexidor v. Donahoe*,
   No. 11-cv-9113, 2016 U.S. Dist. LEXIS 136026 (S.D.N.Y. Sept. 30, 2016) ........................21

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................................10

*Arroyo v. Westlb Admin., Inc.*,
   54 F. Supp. 2d 224 (S.D.N.Y. 1999)........................................................................................30

*Atencio v. United States Postal Serv.*,
   198 F.Supp.3d 340 (S.D.N.Y. 2016)........................................................................................18

*Boughton v. Town of Bethlehem*,
   No. 13-cv-01583, 2015 U.S. Dist. LEXIS 120413 (W.D.N.Y. Sept. 10, 2015)....................16

*Brown v. City of Syracuse*,
   673 F.3d 141 (2d Cir. 2012)......................................................................................................25

*Capobianco v. City of New York*,
   422 F. 3d 47 (2d Cir. 2005)......................................................................................................24

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548 (1986) .....................................................................................10

*Chumra v. Monongalia Health Sys.*,
   No. 17-cv-222, 2019 U.S. Dist. LEXIS 134373 (N.D.W.Va. Aug. 9, 2019) .........................23

*Diaz v. Viagran*,
   No. 16-cv-9106, 2018 U.S. Dist. LEXIS 154733 (S.D.N.Y. Aug. 29, 2018).........................20

*Donfrio v. N.Y. Times*,
   No. 99-cv-1576, 2001 U.S. Dist. LEXIS 13788 (S.D.N.Y. Aug. 24, 2001)...........................30

*Emanuel v. New York*,
   No. 08-cv-1250, 2009 U.S. Dist. LEXIS 111016 (S.D.N.Y. Nov. 25, 2009)..........................13

*Felix v. N.Y.C. Transit Auth.*,
   154 F.Supp.2d 640 (S.D.N.Y. 2001)........................................................................................12

*Gorbea v. Verizon N.Y., Inc.*,
   No. 11-cv-3758, 2014 U.S. Dist. LEXIS 31225 (E.D.N.Y. Mar. 20, 2014)...........................16

*Hart v. New York Univ. Hosps. Ctr.*,
   No. 09-cv-5159, 2011 U.S. Dist. LEXIS 116538 (S.D.N.Y. Oct. 7, 2011),
   *aff'd*, 510 Fed. Appx. 22 (2d Cir. 2013) .............................................................................12

*Hazeldine v. Beverage Media*,
   954 F.Supp. 697 (S.D.N.Y. 1977) .......................................................................................17

*Heilweil v. Mr. Sinai*,
   32 F.3d 718 (2d Cir. 1994)....................................................................................................13

*Jacobsen v. New York City Health & Hosps. Corp.*,
   22 N.Y.3d 824 (N.Y. 2014) ..................................................................................................18

*Kemer v. Johnson*,
   900 F. Supp. 677 (S.D.N.Y. 1995) .......................................................................................18

*Kops v. PPM Am., Inc.*,
   No. 15-cv-1584, 2016 U.S. Dist. LEXIS 177692 (S.D.N.Y. 2016).......................................29

*Lent v. Goldman Sachs & Co.*,
   No. 97-cv-9413, 1998 U.S. Dist. LEXIS 20371 (S.D.N.Y. Dec. 29, 1998) ..........................30

*Matsushita Elec. Indus. Co. v. Zenith*,
   475 U.S. 574 (1986)..............................................................................................................10

*Mazzocchi v. Windsor Owners Corp.*,
   204 F.Supp.3d 583 (S.D.N.Y. 2016) (Torres, J.)..................................................................14

*McBride v. BIC Consumer Products Mfg. Co, Inc.*
   583 F.3d 92 (2d Cir. 2009).............................................................................................18, 24

*McDermott v. Xerox Corp.*,
   65 N.Y.2d 213 (N.Y. 1985) ..................................................................................................17

*McDonald Douglas Corp. v. Green*,
   411 U.S. 792 (1973)..............................................................................................................24

*McKenzie v. Meridian Capital Grp., LLC*,
   35 A.D.3d 676 (2d Dep't 2006) ............................................................................................27

*Melendez v. Cty. of Westchester*,
   No. 17-cv-9637, 2019 U.S. Dist. LEXIS 8530 (S.D.N.Y. Jan. 16, 2019) ............................12

*Melman v. Montefiore Med. Ctr.*,
   98 A.D. 3d 107, 946 N.Y.S. 2d 27 (1st Dept. 2012)............................................................29

*Micari v. TWA*,
    43 F.Supp.2d 275 (E.D.N.Y. 1999) ..................................................................22

*Monroe v. Cortlandt County*,
    37 F.Supp.2d 546 (N.D.N.Y. 1999) .................................................................14

*Muller v. Costello*,
    187 F.3d 298 (2d Cir. 1999) ...........................................................................27

*Natofsky v. City of New York*,
    921 F.3d 337 (2d Cir. 2019) ...........................................................................26

*Noll v. IBM*,
    787 F.3d 89 (2d Cir. 2015) ................................................................11, 18, 28

*Pezhman v. City of New York*,
    47 A.D.3d 493 (1st Dept. 2008) .....................................................................27

*Pierre v. Napolitano*,
    958 F.Supp.2d 461 (S.D.N.Y. 2013) ..............................................................25

*Rodriguez v. Vill. Green Realty, Inc.*,
    788 F.3d 31 (2d Cir. 2015) ........................................................................14, 17

*Sacks v. Gandhi Eng'g, Inc.*
    999 F. Supp. 2d 629 (S.D.N.Y. 2014) ............................................................24

*Santiago v. N.Y. City Police Dep't.*,
    No. 05-cv-3035, 2007 U.S. Dist. LEXIS 91880 (S.D.N.Y. Dec. 14, 2007) ...........15

*Schapiro v. N.Y. City Dep't of Health*,
    179 F. Supp. 2d 170 (S.D.N.Y. 2001) ............................................................29

*Seivright v. Montefiore Med. Ctr.*,
    No. 11-cv-8934, 2014 U.S. Dist. LEXIS 30137 (S.D.N.Y. 2014) .....................28

*Sista v. CDC Ixis N. Am., Inc.*,
    445 F.3d 161 (2d Cir. 2006) ...........................................................................24

*Smith v. Midland Brake*,
    138 F.3d 1304 (10th Cir. 1998) ......................................................................20

*Sobhi v. Sociedad Textil Lonia Corp.*,
    No. 13-cv-8073, 2014 U.S. Dist. LEXIS 179427 (S.D.N.Y. Dec. 31, 2014)
    (Torres, J.) ......................................................................................................11

*Van Ever v. N.Y.S. Dep't of Correctional Servs.*,
    2000 U.S. Dist. LEXIS 16960 (S.D.N.Y. Nov. 21, 2000) ................................13

*Warheit v. De Graff Mem'l Hosp.*,
  No. 97-cv-0037, 2000 U.S. Dist. LEXIS 1653 (W.D.N.Y. Feb. 14, 2000) ...........................16

*Weinstock v. Columbia Univ.*,
  224 F.3d 33 (2d Cir. 2000).................................................................................................10

*Weisbecker v. Sayville Union Free Sch. Dist.*,
  890 F.Supp.2d 215 (E.D.N.Y. 2012) .................................................................................25

*Wellington v. Spencer*-Edwards,
  No. 16-cv-6238, 2019 U.S. Dist. LEXIS 110568 (S.D.N.Y. July 1, 2019)
  (Torres, J.)....................................................................................................................10, 28

*Wenc v. New London Bd. of Educ.*,
  No. 14-cv-0840, 2016 U.S. Dist. LEXIS 108736 (D. Conn. Aug 16, 2016) ........................27

*Wheeler v. Jackson Nat'l Life Ins. Co.*,
  159 F.Supp.3d 828 (M.D.Tn. 2016)...................................................................................20

*Witchard v Montefiore Med. Ctr.*,
  103 A.D.3d 596 (1st Dep't 2013) .......................................................................................27

*Young v. Westchester County Dep't of Soc. Servs.*,
  57 Fed. Appx. 492 (2d Cir. 2003) ......................................................................................13

**Statutes**

42 U.S.C. § 12102(1) .............................................................................................................12

42 U.S.C. § 12102(3)(A)........................................................................................................24

42 U.S.C. § 12102(d)(4)(A)....................................................................................................30

Defendant NYU Langone Hospitals, sued incorrectly herein as NYU Langone Health Center (the "Hospital" or "Defendant"), by its attorneys Jackson Lewis P.C., respectfully submits this memorandum of law in support of Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56.

**PRELIMINARY STATEMENT**

Plaintiff Jasmine Norman ("Plaintiff") is an incumbent employee who suffered no changes to the terms and conditions of her employment. Her only claim is that Defendant violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq* ("ADA"), the New York State Executive Law § 296, *et seq.* ("NYSHRL") and the New York City Administrative Code § 8-107(1), *et seq*. ("NYCHRL") by requiring Plaintiff to receive an influenza ("flu") vaccine in early 2018, *after* an allergist confirmed that it was medically safe for her to be vaccinated. Her claim is meritless, and should be dismissed.

Limiting the spread of the flu virus is of critical importance to Defendant, as the flu can result in serious illness or death for many of the Hospital's vulnerable patients. In 2017-2018, to best protect its patients and as a condition of continued employment, the Hospital required all employees to receive an annual flu vaccine or an approved vaccine exemption, which, in the circumstances here, was provided only for employees with accepted medical exemptions. This requirement was a key component of the Hospital's safety and flu prevention efforts, as Hospital employees, regardless of whether they work in patient areas or elsewhere, are at high risk for flu exposure from, or transmission to, other employees or Hospital patients.

Consistent with its policy, the Hospital restricted medical exemptions to those with a true medical contraindication to the flu vaccine. Here, Plaintiff claimed that she was medically contraindicated based on an alleged incident seventeen years earlier. In 2001, Plaintiff alleged that

1

she experienced shortness of breath and heart palpitations for approximately 15 to 20 minutes while driving home after receiving the flu vaccine. The symptoms were mild enough that Plaintiff was able to continue driving, and both the shortness of breath and heart palpitations resolved without medical intervention. Plaintiff, who now characterizes the incident as a "horrible allergic reaction," self-diagnosed herself as having an "allergy to the flu shot" and decided that she would never be vaccinated again.

Plaintiff submitted an exemption request for the 2017-2018 flu season, which noted that she was allergic to eggs and had experienced symptoms in 2001. Based on this information, the Hospital determined that Plaintiff might be a candidate for "FluBlok," a recently available flu vaccine that was developed after Plaintiff's prior episode and, for the first time, did not contain egg proteins. Based on these facts, the Hospital referred Plaintiff to an allergist for further evaluation. Plaintiff, however, refused to take a simple skin test to determine whether a she was, or might be, allergic to any component of FluBlok. Ultimately, she agreed to FluBlok skin test only after the Hospital denied her exemption request (based on her refusal to be tested) and informed her that her employment would be terminated for not complying with the Hospital's policy. When the test result was negative, the allergist determined that an allergic reaction was unlikely and administered Plaintiff the FluBlok vaccine. Plaintiff subsequently reported shortness of breath and palpitations and was escorted to the Emergency Department. The Emergency Department characterized her reaction as "mild," noted that she may have experienced a "panic attack," and discharged her within hours with the diagnosis of "allergic disorder, initial encounter." At the allergist's recommendation, Defendant granted Plaintiff's exemption request, which remains in place to date. Plaintiff remains employed at the Hospital and acknowledges that she suffered no retaliation or adverse employment action since.

2

This lawsuit followed. Plaintiff alleges Defendant violated the ADA, NYSHRL, and NYCHRL by not accommodating her purported disability (an "allergy to the flu shot"), discriminating against her because of her actual or perceived disability, and by retaliating against her for requesting an accommodation. As detailed below, Plaintiff fails to meet her *prima facie* burden, both because there is no evidence Plaintiff actually was disabled at the time she requested an accommodation, and, whether disabled or not, Defendant provided her with a reasonable accommodation. Since there are no genuine issues of material fact, Defendant is entitled to judgment as a matter of law and this case must be dismissed with prejudice.

## STATEMENT OF FACTS

### I.    DEFENDANT'S INFLUENZA VACCINE REQUIREMENT

As part of its commitment to patient safety, the Hospital requires that all employees receive an annual flu shot or obtain an approved vaccine exemption. Pursuant to its policy, compliance is mandatory and employees who refuse vaccination (or refuse vaccination after an exemption request is denied) are terminated from their employment. (DSOF ¶20; Def. Ex. 13).[1]

Prior to 2016, Defendant honored individual requests for a *personal* exemption to the flu shot requirement. (DSOF ¶22; Phillips Decl. ¶10; Def. Ex. 11). While its policy at the time also provided for medical exemptions, there was no formal process for reviewing or considering such requests, since given the breadth of the personal exemption, Defendant granted every exemption request it received, regardless of reason. (DSOF ¶¶24-25; Phillips Decl. ¶11). In July 2016, the Hospital eliminated the personal exemption, based in part on the recommendation of its Chief

---

[1] References to Defendant's Statement of Uncontested Facts Pursuant to Rule 56.1 are noted as "DSOF ¶_____." References to Defendant's exhibits marked at Plaintiff's deposition taken on August 26, 2019 are referred to herein as "Def. Ex. __". References to the Declaration of Michael Phillips, M.D., are referred to herein as "Phillips Decl. ¶__." References to the Declaration of Amina Abdeldaim, M.D., M.P.H., are referred to herein as "Abdeldaim Decl. ¶__"). References to Plaintiff's Deposition Transcript, dated August 26, 2019, are referred to herein as "Tr. __".

Hospital Epidemiologist, Michael Phillips, M.D.   (DSOF ¶¶27-28; Phillips Decl. ¶¶12-13).Dr. Phillips believes that the flu vaccine is the single best way to prevent flu infection and transmission, and that increasing the vaccination rate of Defendant's employees could reduce significantly the risk of flu infection in its patients. (DSOF ¶33; Phillips Decl. ¶16).[2] By eliminating the personal exemption and requiring all employees (not just those who work in areas where patients may be present) to take flu shots, Dr. Phillips believed that the safety of all Hospital employees and patients would increase. (DSOF ¶35; Phillips Decl. ¶18).

In the circumstances here relevant, after eliminating the personal exemption, the Hospital exempted employees only because of approved religious reasons or based on accepted medical contraindication to receiving the flu shot. (DSOF ¶42; Phillips Decl. ¶25; Def. Ex. 13). Requests for medical exemption are reviewed on a case-by-case basis by its Influenza Vaccination Declination Review Board (the "IVDRB"), a panel committee consisting of, among others, the Chief Hospital Epidemiologist and the Director of Occupational Health Services ("OHS"). (DSOF ¶48; Phillips Decl. ¶5). Employees requesting an exemption must submit a standardized Exemption Request Form, completed by the employees' medical provider, that details the medical basis for the exemption request. (DSOF ¶50; Phillips Decl. ¶27). The IVDRB then reviews each employee's Exemption Request Form to determine: (1) whether the employee has demonstrated an accepted medical contraindication to the flu vaccine; and/or, (2) whether, in lieu of the traditional, egg-based flu vaccine, the employee can instead receive FluBlok, a recently available

---

[2] Dr. Phillips' belief is based on, among other things, his own extensive experience in infection control; the reports and findings of the Center for Disease Control ("CDC") and New York State Department of Health, both of which agree that a flu shot is the best tool currently available to protect against influenza; and, the CDC's Advisory Committee on Immunization Practices and Healthcare Infection Control Practices, which recommend that all health care workers receive annual flu shots. (DSOF ¶34; Phillips Decl. ¶16).

egg-free flu vaccine. (DSOF ¶39, 58; Phillips Decl. ¶34). If the IVDRB cannot make a determination based on the information provided, it refers the employee to an allergist (or other appropriate medical professional) for further evaluation. (DSOF ¶60; Phillips Decl. ¶36).[3]

## II.    PLAINTIFF'S EMPLOYMENT AND REACTIONS TO THE FLU VACCINE

Plaintiff was hired by Defendant as a Clinical Database Specialist on or around April 25, 2011. (DSOF ¶1; Compl. ¶11). Plaintiff claims she is allergic to the flu vaccine, and that she had two reactions to the vaccine before starting employment at Defendant – once as a child, of which she has no independent recollection, and once in 2001, when she experienced heart palpitations and shortness of breath approximately 15 to 20 minutes after receiving the vaccine. (DSOF ¶¶73-74; Tr. 16, 78). The symptoms, which occurred while Plaintiff was driving and did not require Plaintiff to pull over or stop the car, lasted approximately 10 to 20 minutes and resolved without medical intervention. (DSOF ¶74, Tr. 16). Despite regular doctors' visits (including at least five in 2001 alone), Plaintiff first reported the incident to her primary care physician, Vinod K. Aggarwal, M.D., in 2010 or 2011, and did so only because another employer asked for documentation substantiating Plaintiff's request for an exemption from that employer's flu vaccine policy. (DSOF ¶74; Tr. 26-27).[4]

---

[3] The IVDRB relies on the CDC's Advisory Committee on Immunization Practice's definition of accepted medical contraindications. The only individuals contraindicated from receiving FluBlok – which first was approved by the Food and Drug Administration in 2013 – are those who have had a severe allergic reaction (e.g., anaphylaxis) to a component of FluBlok. With the exception of Triton-X and the flu virus itself, FluBlok does not contain any of the same ingredients as traditional, egg-based versions of the flu vaccine. (DSOF ¶39, 58; Phillips Decl. ¶34).

[4] In her response to Defendant's 56.1 Statement, Plaintiff states she "reported the 2001 negative reaction to Dr. Aggarwal during her annual checkup in 2002." (PSOF ¶83). The testimony makes clear that this is not the case. Plaintiff testified that she "didn't see a doctor in 2002 primarily with regard to a flu shot, no" but that "as a part of your annual with any job employment, you have to get the standard PPD. If you're positive for that you have to get a chest x-ray, you have to be fitted for a respirator mask. These are standard compliance. And a part of the standard compliance, they did ask about the flu shot. So verbally it was discussed, yes." (Tr. 24-25).

## III.   PLAINTIFF'S EXEMPTION REQUESTS AND INITIAL REFUSAL TO TAKE THE FLUBLOK SKIN TEST

The 2016-2017 flu season was the first time Defendant reviewed medical exemption requests. (DSOF ¶25; Phillips Decl. ¶11). Plaintiff's 2016 Exemption Request Form states only that Plaintiff had an "[a]naphylatic or severe allergic reaction after a previous influenza vaccination". (DSOF ¶81; Def. Ex. 15). Although the Form asked for a description of the reaction, Plaintiff's physician, Dr. Aggarwal, did not complete that section, describe the reaction, or provide any further detail about Plaintiff's purported reaction. *Id*. As Plaintiff admits, Dr. Aggarwal relied entirely on Plaintiff's description of her 2001 reaction to complete the Form – he did not treat Plaintiff for the 2001 reaction; did not conduct any allergy testing to determine if Plaintiff was allergic to the flu vaccine or any of its components; and, to her knowledge, based his "diagnosis" solely on Plaintiff's recollection of the 2001 incident recounted to him years later. (DSOF ¶¶82-83; Tr. 14-18, 26-27, 77, 118). Regardless, Defendant did not require Plaintiff to take a flu shot for the 2016-2017 flu season. (DSOF ¶76; Compl. ¶17).[5]

Pursuant to Defendant's Immunity Requirements Policy, employees with approved medical exemptions were not required to submit a new exemption form each year, though they were required to attest to the fact that the medical condition upon which the exemption was granted had not changed. (DSOF ¶85; Def. Ex. 13). For the 2017-2018 flu season, employees were required to submit their requests for medical exemption (i.e., an Exemption Request form or attestation) no later than October 20, 2017, and were directed to submit such requests *via* email to

---

[5] Defendant requires employees with valid exemptions to wear surgical masks at all times and at all of the Hospital's locations, regardless of whether the employee works in a patient care area. (DSOF ¶68; Def. Ex. 13). Defendant does not allow employees without accepted exemptions to wear surgical masks in lieu of receiving the flu vaccine because, according to Dr. Phillips and based on his own background in infection control, medical research, and the CDC's recommendations, surgical masks are less effective at preventing the spread of the flu virus than receiving an annual vaccination. (Phillips Decl. ¶53; Phillips Decl., Exhibit C-8).

FluExemption@nyumc.org. (DSOF ¶¶86-97; Phillips Decl. ¶42, Exhibits C-9, C-10). Though Defendant reminded employees of this *via* email and a dedicated flu portal on Defendant's intranet, Plaintiff incorrectly emailed a different web address, GotMyFluShot@nyumc.org, on November 1, 2017, and asked whether it was "necessary to complete the same form over again when the indication remains the same?  Please advise." (DSOF ¶91; Def. Ex. 16). No one responded, and Plaintiff submitted a new 2017 Exemption Request Form on November 10, 2017.[6]  *Id.*

The IVDRB revised its Exemption Request Form in October 2017.[7]  Plaintiff completed and submitted this newly-revised Form and provided more information about her medical history and prior reaction to the flu vaccine than was provided in 2016, including that: Plaintiff was allergic to eggs; Plaintiff had no other known allergies; Plaintiff's prior reaction occurred in 2001, well before the creation of egg-free FluBlok; and, Plaintiff had no other contraindications to receiving the flu vaccine. (DSOF ¶99; Def. Ex. 17). Based on this information, the IVDRB determined that Plaintiff was a potential candidate for the FluBlok. (DSOF ¶102; Phillips Decl. ¶47). Though the IVDRB typically denied requests for exemptions from employees with egg

---

[6] GotMyFluShot@nyumc.org was established to receive documentary proof from employees who received their flu vaccine. It was not intended to receive questions about the flu vaccine requirement or exemption process.  (DSOF ¶92; Phillips Decl. ¶43).  Employees were instructed to send any questions about the flu vaccine to FluQuestion@nyumc.org, an email address maintained by the IVDRB specifically for questions related to the flu vaccine and the Hospital's flu vaccine requirement, and any exemption-related documents were to be sent to FluExemption@nyumc.org. (DSOF ¶¶87, 90; Phillips Decl. ¶¶40-41, Exhibit C-9).  Emails sent to GotMyFluShot@nyumc.org were reviewed by a team of nurses, who were responsible for extracting and recording the documents provided by employees; it was not monitored for questions regarding the flu vaccine policy or exemption process.  (DSOF ¶92; Phillips Decl. ¶43).

[7] The revised Exemption Request Form requested more detailed information about the employee's medical history, including information about the employee's allergies (if any) and the date(s) and symptom(s) of any prior reaction(s) to the flu vaccine.  The IVDRB requested this additional information so that it could assess: (1) whether the employee actually had a medical contraindication to the flu vaccine; and, (2) whether the employee could receive FluBlok.  (DSOF ¶¶57-58; Phillips Decl. ¶34; Def. Ex. 16).

allergies and instead offered such employees the FluBlok vaccine, out of an abundance of caution, it referred Plaintiff to the Hospital's Clinical Director, Inpatient Allergy, Amina Abdeldaim, M.D., for further evaluation as to whether Plaintiff could receive FluBlok or whether she required an exemption to all formulations of the flu vaccine. (DSOF ¶¶ 101, 104; Phillips Decl. ¶¶46-47).

After multiple emails requesting Plaintiff schedule an appointment, Plaintiff met with Dr. Abdeldaim on February 7, 2018. (DSOF ¶¶119, 126; Tr. 116-117, 141). After reviewing Plaintiff's medical history and her prior experiences with the flu vaccine, Dr. Abdeldaim offered to conduct a skin test to assess whether Plaintiff could safely receive the FluBlok vaccine. (DSOF ¶127; Abdeldaim Decl. ¶11). Plaintiff refused. (DSOF ¶128; Tr. 132, 139). Given Plaintiff's refusal to undergo the FluBlok skin test, Defendant declined Plaintiff's exemption request and, on February 9, 2018, informed Plaintiff that her exemption request was denied and that she would be terminated that day for failing to comply with the flu vaccine requirement. (DSOF ¶¶130-131; Phillips Decl. ¶49; Def. Ex. 36).

## IV.   PLAINTIFF IS CLEARED TO TAKE THE FLUBLOK VACCINE AND ENCOUNTERS A REACTION

After learning that her employment would be terminated, Plaintiff agreed to receive the traditional (i.e., egg-based) flu vaccine that day. (DSOF ¶140; Tr. 154-158). Rather than require Plaintiff be vaccinated with the traditional vaccine, however, Defendant's Director of OHS arranged for Plaintiff to again meet with Dr. Abdeldaim to receive the FluBlok skin test. (DSOF ¶141; Tr. 154-158). Instead of being terminated, Plaintiff was suspended with pay from Friday, February 9, 2018, until her appointment with Dr. Abdeldaim, which took place on Monday, February 12, 2018. (DSOF ¶143; Tr. 165). During the February 12, 2018 appointment, Dr. Abdeldaim administered the FluBlok skin test, which was negative. (DSOF ¶145; Abdeldaim Decl. ¶146). Given the negative skin test and Plaintiff's medical history, Dr. Abdeldaim believed

an allergic reaction was unlikely and administered Plaintiff the FluBlok vaccine. (DSOF ¶147; Abdeldaim Decl. ¶15).[8]

Forty minutes after receiving the vaccine, Plaintiff reported shortness of breath and palpitations, and was escorted to the Emergency Department after receiving an EpiPen and albuterol. (DSOF ¶¶148-149; Tr. 170-171, 180). The Emergency Department resident characterized her reaction as "mild" and as a possible panic attack.  She was discharged within hours with the diagnosis of "allergic disorder, initial encounter." (DSOF ¶¶150-151; Tr. 174, 182, 183). Plaintiff was out of work from February 12, 2018 to February 20, 2018, when she returned without restrictions. (DSOF ¶155; Tr. 186, 189). While out, she was paid salary using accrued time off. (DSOF ¶155; Tr. 187). On February 14, 2018, Defendant filed a Workers' Compensation claim on Plaintiff's behalf, and medical expenses arising from her reaction to receiving the vaccine were covered under that program. (DSOF ¶154; Tr. 185-186).

Following Plaintiff's visit to the Emergency Department, Dr. Abdeldaim recommended that Plaintiff's exemption request be approved, which the IVDRB did. (DSOF ¶¶152, 158; Phillips Decl. ¶51; Def. Ex. 38). Since that time, Plaintiff has an approved medical exemption from Defendant's flu vaccine requirement and was not required to submit any medical documentation for the 2018-2019 flu season. *Id.*

---

[8] Defendant's retained expert, Gary Stadtmauer, M.D., reviewed Defendant's decision to refer Plaintiff to an allergist and administer the FluBlok vaccine and concluded, in relevant part, that Plaintiff's 2001 reaction to the flu vaccine did not present as an allergic reaction. Based on Plaintiff's 2017 Exemption Request form, Dr. Stadtmauer opined that he would have determined Plaintiff could safely receive FluBlok or the traditional, egg-based version of the flu vaccine and concluded that Dr. Abdeldaim's decision to conduct a skin test for FluBlok, followed by administration of the vaccine, was both justifiable and medically sound. (DSOF ¶162; Briton Aff., Exhibit G).

<u>**ARGUMENT**</u>

**I.      <u>SUMMARY JUDGMENT STANDARD</u>**

Summary judgment is an integral part of the federal rules, designed to ensure the just, speedy and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986); Fed. R. Civ. P. 1, 56; *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001), *cert. denied*, 122 S. Ct. 460 (2001). Far from a disfavored procedural shortcut, "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quotations omitted).

A party is entitled to summary judgment when there are no genuine issues of material fact, and the undisputed facts demonstrate the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[w]here the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can 'point to an absence of evidence to support an essential element of the nonmoving party's claim.'" *Wellington v. Spencer*-Edwards, No. 16-cv-6238, 2019 U.S. Dist. LEXIS 110568, *4 (S.D.N.Y. July 1, 2019) (Torres, J.) (quoting *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)). To defeat a motion for summary judgment the party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts," it must offer concrete evidence in admissible form upon which "a reasonable juror could return a verdict" in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith*, 475 U.S. 574, 486 (1986).

Here, for the reasons set forth below, there are no genuine issues of material fact with respect to Plaintiff's claims and the undisputed facts clearly establish that Defendant is entitled to

judgment as a matter of law. Accordingly, Defendant's motion for summary judgment should be granted and Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

## II.   PLAINTIFF'S ADA AND NYSHRL FAILURE TO ACCOMMODATE CLAIMS MUST BE DISMISSED

To establish a *prima facie* case of failure to accommodate under the ADA or NYSHRL,[9] a plaintiff must show that: (1) she is a person with a disability under the relevant statute; (2) the defendant had notice of her disability; (3) with accommodation, she could perform the essential functions of her position; and, (4) the defendant refused to make such reasonable accommodation. *Noll v. IBM*, 787 F.3d 89, 94 (2d Cir. 2015). While the reasonableness of an accommodation is fact-specific, summary judgment is appropriate:

> in a case such as this, in which the employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is 'plainly reasonable.'  In other words, the plain reasonableness of the existing accommodation ends the analysis. There is no need to engage in further burden-shifting to consider whether the employee's requested accommodation would have been reasonable.

*Id*. at 94.

As set forth more fully herein, there are no genuine issues of material fact that would preclude summary judgment, as Plaintiff cannot establish that she is an individual with a disability under either statute, nor was she denied an accommodation.

---

[9] With the exception of how the statutes define disability, failure to accommodate and disability discrimination under the NYSHRL are analyzed using the same substantive standards as those brought pursuant to the ADA.  *See Sobhi v. Sociedad Textil Lonia Corp.*, No. 13-cv-8073, 2014 U.S. Dist. LEXIS 179427, (S.D.N.Y. Dec. 31, 2014) (Torres, J.) (noting that while disability is defined more broadly, "the remaining requirements to state a *prima facie* case of discrimination [and] failure to accommodate under the NYSHRL are the same as under the ADA.") (citing, *e.g.*, *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 D.3d 208, 212 n.3 (2d Cir. 2001)).

**A.**     **Plaintiff Cannot Meet The First Prong Of Her *Prima Facie* Case As She Is Not An Individual With A Disability**

Plaintiff claims to have an "allergy to the flu shot" and alleges, for purposes of her ADA claim, that this allergy substantially limits her ability to breathe. (Compl. ¶¶1, 51, 63, 71, 77). As set forth more fully below, she cannot establish that this purported allergy constitutes a disability under the ADA or NYSHRL. Plaintiff thus fails to meet the threshold burden of any failure to accommodate claim: proving that she has a disability requiring accommodation.

**1.**     **Plaintiff Is Not An Individual With A Disability Under The ADA**

In relevant part, the ADA defines "disability" as a "physical or mental impairment that substantially limits one or more life activities" or "a record of such an impairment". 42 U.S.C. § 12102(1). The Second Circuit employs a three-part test to determine whether an individual is disabled, under which Plaintiff must  "(1) show that [she] suffers from a physical or mental impairment, (2) identify the activity claimed to be impaired and establish that it constitutes a major life activity, and (3) show that [her] impairment substantially limits the major life activity previously identified." *Melendez v. Cty. of Westchester*, No. 17-cv-9637, 2019 U.S. Dist. LEXIS 8530, at **20-21 (S.D.N.Y. Jan. 16, 2019) (quoting *Weixel v. Bd. of Educ.*, 287 F.Supp.3d 138, 147 (2d Cir. 2002) (internal quotations omitted)). "If [Plaintiff] fails to satisfy each of these three prongs, her discrimination claim must be dismissed." *Felix v. N.Y.C. Transit Auth.*, 154 F.Supp.2d 640, 653 (S.D.N.Y. 2001).

Plaintiff, of course, must show that she was disabled at the time of the alleged adverse actions. *Hart v. New York Univ. Hosps. Ctr.*, No. 09-cv-5159, 2011 U.S. Dist. LEXIS 116538, at *12 (S.D.N.Y. Oct. 7, 2011), *aff'd*, 510 Fed. Appx. 22 (2d Cir. 2013). In the context of a failure to accommodate claim, Plaintiff is required to "demonstrate substantial impairment of a major life activity at the time the accommodation is sought to trigger the reasonable accommodation

requirement of the ADA." *Van Ever v. N.Y.S. Dep't of Correctional Servs.*, 2000 U.S. Dist. LEXIS 16960, at **10-11 (S.D.N.Y. Nov. 21, 2000). Plaintiff, therefore, must prove that her "allergy to the flu shot" was a covered disability as of November 10, 2017, the date she requested an exemption from the flu vaccine requirement. She cannot do so on the undisputed facts.

### a.   Plaintiff Cannot Rely On Her Reaction To The FluBlok Vaccine As Evidence That She Was Disabled In November 2017

Plaintiff cannot rely on, nor can this Court consider, Plaintiff's February 12, 2018 reaction to the FluBlok vaccine as evidence that Plaintiff was disabled at the time of her earlier exemption request.[10] Defendant is obligated to accommodate *existing* disabilities, not hypothetical ones – whether Plaintiff's condition subsequently worsened is irrelevant to whether she was disabled at the time she requested and Defendant considered her accommodation request. The Second Circuit has soundly rejected the argument that "subsequent medical evidence is probative of a . . . [plaintiff's] medical condition at the time the employer made the adverse employment action," as an employer is responsible only for employment decisions "based on information available to it when it decides." *Heilweil v. Mt. Sinai*, 32 F.3d 718, 725 (2d Cir. 1994); *see also Young v. Westchester County Dep't of Soc. Servs.*, 57 Fed. Appx. 492, 494 (2d Cir. 2003) (plaintiff could not rely on later diagnosis as evidence that prior actions were unlawful, as employer "cannot be liable under the ADA unless it had information at the time of its pertinent decisions that would have permitted a reasonable employer to conclude that [Plaintiff] was, in fact, disabled.").

In light of this clear instruction, courts routinely reject efforts by plaintiffs to prove a disability through evidence of a later impairment. *See Emanuel v. New York*, No. 08-cv-1250, 2009

---

[10] Notably, Plaintiff's reaction was immediately preceded by a skin test that indicated she was not allergic. Furthermore, and as noted below, immediately following Plaintiff's reaction, Defendant granted her an exemption from the flu vaccine requirement.

U.S. Dist. LEXIS 111016, at *22 n.7 (S.D.N.Y. Nov. 25, 2009) (asthma attack occurred "approximately two months **after** Plaintiff sought an accommodation from Defendants, and is not probative as to whether Plaintiff was disabled" at the time of the accommodation request) (emphasis in original); *Monroe v. Cortlandt County*, 37 F.Supp.2d 546, 553 (N.D.N.Y. 1999) ("If an employee does not suffer a substantial limitation in a major life activity at the time of an adverse employment decision, then he is not 'disabled' at the pertinent time when the employer authorized that action – even if at that time a condition exists that in the future causes the employee to suffer a disability."). The same must apply here. Plaintiff requested an accommodation in November 2017. She must prove that she was disabled at that time, with no regard to her subsequent reaction to the FluBlok vaccine, as such reaction could not have played any role in Defendant's analysis of whether Plaintiff was disabled and whether she required an accommodation. To the contrary, the Hospital exercised reasonable discretion and precaution by requiring Plaintiff to undergo a skin test before receiving the vaccination. That test indicated no allergy present and therefore disability cannot be shown and was not known at the relevant time.

   b.   Plaintiff Was Not Impaired During The Relevant Time Period

   While the Second Circuit has confirmed that Plaintiff must provide "sufficient evidence to create a genuine dispute that [she] suffers from an impairment," *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 42 (2d Cir. 2015), it has "not ruled on whether [medical] evidence is necessary to establish the existence of an impairment in the first instance," *Mazzocchi v. Windsor Owners Corp.*, 204 F.Supp.3d 583, 610 (S.D.N.Y. 2016) (Torres, J.).[11] We will assume for this motion that

---

[11] Both the Second Circuit's decision in *Rodriguez* and this Court's decision in *Mazzocchi* analyze disability under the Fair Housing Act, which aligns with the definition of disability under the ADA prior to the ADAAA. However, the ADAAA did not alter the requirement that Plaintiff demonstrate the existence of a physical or mental impairment.

Plaintiff is not required to submit medical evidence of an impairment. Even still, Plaintiff cannot establish that her 2001 "allergic reaction" constitutes an impairment under the ADA.

As detailed above, Plaintiff alleges that she received the flu vaccine in 2001, after which she experienced shortness of breath and heart palpitations for approximately 15-20 minutes.[12] Although the symptoms were mild enough that Plaintiff continued driving throughout the duration of the incident and resolved without medical intervention, Plaintiff – without seeking medical treatment, consulting with an allergist, or undergoing allergy testing – diagnosed herself as allergic to the flu vaccine. Plaintiff admits she never sought to corroborate her own self-diagnosis through allergy or other diagnostic testing, as "the reaction itself never occurred again, so it never gave me a reason to go explore it beyond what I already knew in getting more testing done. **It was already confirmed for me**."  (Tr. 77-78).

This is fatal to her claim. While the burden for proving a physical or mental impairment is not high, "self-diagnosis . . . does not constitute an impairment. There is no competent medical diagnosis . . . and so there can be no impairment." *Santiago v. N.Y. City Police Dep't.*, No. 05-cv-3035, 2007 U.S. Dist. LEXIS 91880, at *20 (S.D.N.Y. Dec. 14, 2007). That Dr. Aggarwal completed Plaintiff's 2016 and 2017 Exemption Request Forms does not change the analysis, as Dr. Aggarwal: did not treat Plaintiff for the 2001 reaction; did not conduct any allergy testing to determine whether Plaintiff was allergic to the flu vaccine or any of its components; and, based his "diagnosis" of a severe or anaphylactic reaction solely on Plaintiff's recollection of the 2001 incident. Transcribing Plaintiff's own characterization of her "horrible allergic reaction" (Compl. ¶19) onto the Exemption Request form is not a competent medical diagnosis, but rather Plaintiff's own "self-diagnosis as memorialized by her doctor," which is insufficient, as a matter of law, to

---

[12] There is no documentation, medical or otherwise, to corroborate this incident.

establish an impairment.[13] *Warheit v. De Graff Mem'l Hosp.*, No. 97-cv-0037, 2000 U.S. Dist. LEXIS 1653, at *17 (W.D.N.Y. Feb. 14, 2000).

c.   Plaintiff's "Allergy" Did Not Substantially Limit Her Breathing

Even assuming, *arguendo*, that Plaintiff could demonstrate an impairment, which she cannot, there is no evidence that her "allergy to the flu shot" substantially limited her breathing. While the ADAAA lowered the standard for what is considered a substantial limitation, it did not eliminate it entirely. Plaintiff still must show that she was limited in her ability to breathe "as compared to most people in the general population." 29 C.F.R. § 1630.2(j). She cannot do so. Even viewing the facts in the light most favorable to Plaintiff, shortness of breath for 15 to 20 minutes *during which Plaintiff was able to continue driving* and which resolved without any medical intervention is not a substantial limitation on her ability to breathe. Courts routinely have dismissed claims from plaintiffs with more severe breathing difficulties. *See, e.g., Boughton v. Town of Bethlehem*, No. 13-cv-01583, 2015 U.S. Dist. LEXIS 120413, at *20 (W.D.N.Y. Sept. 10, 2015) (summary judgment granted to employee with uncontrolled hypertension and contributing "extreme shortness of breath"); *Gorbea v. Verizon N.Y., Inc.*, No. 11-cv-3758, 2014 U.S. Dist. LEXIS 31225, at *27 (E.D.N.Y. Mar. 20, 2014) (granting summary judgment where Plaintiff had asthma causing infrequent breathing problems requiring an inhaler).

Regardless, as noted above, there is no documentation substantiating Plaintiff's 2001 incident, and certainly nothing confirming that she had an allergy that caused breathing limitations.

---

[13] Moreover, it is unclear what Dr. Aggarwal understood about Plaintiff's prior reaction – though asked to do so on the 2016 Exemption Request Form, Dr. Aggarwal did not summarize or provide any description of Plaintiff's prior reaction.  The 2017 Exemption Request Form, also completed by Dr. Aggarwal, contradicts Plaintiff's own version of events. It states Plaintiff experienced symptoms 3 days after receiving the vaccine, when Plaintiff claims she experienced symptoms that same day.  (DSOF ¶100; Tr. 16, 89-91; Def. Ex. 16).

Plaintiff cannot rely solely on her own testimony to raise a genuine issue of material fact as to a substantial limitation – she must either provide medical evidence detailing the nature and extent of the limitation, or "non-medical evidence that conveys, in detail, the substantially limiting nature of an impairment". *Rodriguez*, 788 F.3d at 44. "[C]onclusory declarations are insufficient."  *Id*.

### 2.      Plaintiff Was Not Disabled Under The NYSHRL

Nor is Plaintiff disabled under the more expansive NYSHRL definition. While the state law does not require a showing of substantial limitation, Plaintiff still must show that, at the time she requested an accommodation, she suffered from a "physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law § 292(21). Critical to the definition is that Plaintiff proffer evidence that her impairment has either caused the loss of a normal bodily function *or* that it has been diagnosed using a medically accepted technique. *Hazeldine v. Beverage Media*, 954 F.Supp. 697, 706 (S.D.N.Y. 1977); *McDermott v. Xerox Corp.,* 65 N.Y.2d 213, 219 (N.Y. 1985). There is no evidence that Plaintiff was diagnosed with an allergy to the flu shot through accepted clinical or laboratory diagnostic techniques,  nor is there any evidence that this "allergy" caused her to lose a bodily function.

### B.      Plaintiff Cannot Meet The Fourth Prong Of Her *Prima Facie* Case As Defendant Offered Her A Plainly Reasonable Accommodation

Even assuming Plaintiff could prove that she was disabled – and she cannot – she was not denied a reasonable accommodation. A reasonable accommodation is one that "enable[s] an individual with a disability . . . to perform the essential functions of [her] position" or "enjoy equal benefits and privileges of employment"). 29 C.F.R. 1630(2)(o). Accommodations can be made "in a variety of ways . . . and 'employers are not required to provide a perfect accommodation, or the

very accommodation most strongly preferred by the employee,' as long as the chosen accommodation is effective." *Atencio v. United States Postal Serv.*, 198 F.Supp.3d 340, 356 (S.D.N.Y. 2016) (quoting *Noll*, 787 F.3d at 95)).

The law "envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated" and to identify potential accommodations. *Noll*, 787 F.3d at 98 (citing *Jackan v. N.Y.S. Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)). While employers are encouraged to consider an employee's preferred accommodation, it is the employer's "ultimate discretion to choose between effective accommodations," and there is "no liability for an employer's failure to explore alternative accommodations . . ." so long as a reasonable accommodation already has been provided. [14] *Id.*; *see also Kemer v. Johnson*, 900 F. Supp. 677, 686 (S.D.N.Y. 1995) ("Once a reasonable accommodation has been made, a defendant has fulfilled its obligation"). Here, Plaintiff alleges Defendant "failed to engage in the interactive process"[15] and failed to accommodate her disability by denying her exemption request and requiring she receive the FluBlok vaccine. Neither is true.

### 1.     Defendant Did Not Fail To Engage In The Interactive Process

Plaintiff appears to argue that Defendant failed to engage in the interactive process because it did not respond to Plaintiff's emails about the attestation process and whether there was a change

---

[14] Whether Plaintiff's offer to wear a surgical mask in lieu of receiving the flu vaccine is thus irrelevant, provided the Hospital establishes that it offered Plaintiff a reasonable accommodation. As set forth herein, it did.

[15] There is, of course, no independent claim for failing to engage in the interactive process. Defendant's participation is relevant only if there is a denial of accommodation, which did not occur here. *McBride v. BIC Consumer Products Mfg. Co, Inc.* 583 F.3d 92, 101 (2d Cir. 2009); *Jacobsen v. New York City Health & Hosps. Corp.*, 22 N.Y.3d 824, 838 (N.Y. 2014) (rejecting notion that "a good faith interactive process is an independent element of the disability discrimination analysis" under the NYSHRL or NYCHRL, though it is relevant to whether summary judgment is appropriate).

in the Immunity Requirements policy, or because it did not request additional medical documentation from Dr. Aggarwal. Neither argument is persuasive. Even assuming Defendant did ignore Plaintiff's questions – and the undisputed facts establish that it did not[16] - Defendant still engaged in the interactive process by, *inter alia*, considering Plaintiff's request; referring her to Dr. Abdeldaim for additional evaluation; explaining to her manager (who in turn spoke with Plaintiff) that she needed to meet with Dr. Abdeldaim; and, providing her with a second opportunity to undergo FluBlok skin testing after her initial refusal. This is indisputably sufficient. Regardless, there is no evidence that Defendant "ignored" Plaintiff out of discriminatory intent – Plaintiff admits she "does not know" why "this confusion was happening" and does not believe it was related to her personally. (DSOF ¶119).

Nor was Defendant required to obtain additional information from Dr. Aggarwal, as the documentation provided (which indicated that Plaintiff was allergic to eggs and had a reaction to an egg-based version of the traditional flu vaccine) made clear that a FluBlok skin test was appropriate. Moreover, Plaintiff acknowledged that Dr. Aggarwal never conducted any allergy or other diagnostic testing, and admits he did not have any other medical documentation to provide (Tr. 163). Plaintiff cannot plausibly argue that Defendant failed to engage in the interactive process by not requesting documents that she admits did not exist.

### 2. Defendant's Accommodation Was Reasonable

Regardless, while Defendant's good-faith participation in the interactive process is demonstrative of its efforts to accommodate Plaintiff, it ultimately is irrelevant as Defendant

---

[16] The undisputed facts establish, at minimum, that the IVDRB explained to Plaintiff why she was being referred to Dr. Abdeldaim.  (DSOF ¶108; Def. Ex. 21). Moreover, Defendant made its Immunity Requirements policy widely available on its intranet and maintained ongoing communications about its flu vaccine campaign and its vaccine- and exemption-related processes. (DSOF ¶88; Phillips Decl. ¶¶41-42; Phillips Decl., Exhibit C-9, Exhibit C-10).

offered Plaintiff the FluBlok skin test and FluBlok vaccine, a plainly reasonable accommodation. That Defendant previously exempted Plaintiff from the flu vaccine requirement is irrelevant, as "an employer's prior grant of a 'more than reasonable accommodation' that exceeds its obligation under the law does not create a legal obligation on the part of the employer to maintain that accommodation." *Diaz v. Viagran*, No. 16-cv-9106, 2018 U.S. Dist. LEXIS 154733, at *44 (S.D.N.Y. Aug. 29, 2018) (citing *Uhl v. Home Depot U.S.A., Inc.*, 08-cv-3064, 2010 U.S. Dist. LEXIS 84565, at *5 (E.D.N.Y. Aug. 13, 2010)). Plaintiff was not disabled at the time of her 2017 exemption request and was not legally entitled to an exemption simply because she had received one in the past.

While Plaintiff argues that Defendant violated its Immunity Requirements policy by not accepting her November 1, 2017 "attestation," the policy does not state that the IVDRB cannot or will not reconsider the necessity or appropriateness of a previously granted exemption, or that employees with prior exemptions automatically will be granted future exemptions in perpetuity.[17] It states only that employees with prior exemptions will not be required to submit a new exemption request form. (DSOF ¶86; Def. Ex. 13). Once Plaintiff submitted the 2017 Exemption Request Form, however, nothing in the Immunity Requirements policy or the law precluded the Hospital from reviewing anew the need for an exemption. *Wheeler v. Jackson Nat'l Life Ins. Co.*, 159

---

[17] Even assuming Defendant acted in a manner inconsistent with its Immunity Requirements policy – and it did not – "[a]bsent proof of discrimination as defined by the ADA, an employer's failure to follow its own internal policies does not in itself constitute a violation of the ADA." *Smith v. Midland Brake*, 138 F.3d 1304, 1310 (10th Cir. 1998). Other than Plaintiff's belief that Defendant should have accepted her attestation, nothing suggests that Defendant's failure to do so was discriminatory. At most, the record suggests a miscommunication, potentially attributable to the fact Plaintiff's communicated regarding her prior exemption after the required deadline and to the incorrect email address. There is no evidence that Plaintiff's communication even was reviewed by the IVDRB, and certainly no evidence that the IVDRB ignored or denied Plaintiff's attempt out of discriminatory animus or in an effort to frustrate the interactive process.

F.Supp.3d 828, 853 (M.D.Tn. 2016) (employer "certainly able to act on new information" obtained regarding employee's disability status).

The Hospital's only obligation was to offer Plaintiff an accommodation that effectively addressed her alleged physical condition as it existed at the time. The undisputed facts establish that it did. Plaintiff's 2017 Exemption Request Form noted that she was allergic to eggs and that she had an allergic reaction to the flu vaccine in 2001, a period in which all flu vaccines were egg-based. In response, the IVDRB evaluated Plaintiff to determine whether she could safely receive the FluBlok vaccine, which is egg-free, and which has almost none of the same ingredients as traditional, egg-based flu vaccine. Rather than simply requiring administration of the FluBlok vaccine, as it reasonably could have done, the Hospital took the extra step of referring Plaintiff to its allergist, Dr. Abdeldaim, for further evaluation. In turn, Dr. Abdeldaim conducted a review of Plaintiff's medical history and prior reactions, conducted a FluBlok skin test, which was negative, and ultimately determined that it was medically appropriate for Plaintiff to receive the FluBlok vaccine. Thus, Defendant offered Plaintiff an accommodation that addressed the concerns identified in her 2017 Exemption Request form – namely, that she was allergic to eggs, and had a prior reaction to an egg-based formulation of the flu vaccine – and which was consistent with Dr. Abdeldaim's determination that Plaintiff was unlikely to have an allergic reaction to the FluBlok vaccine. As Defendant provided an accommodation that was "directly tailored to the physical limitations identified in the medical evaluation of Plaintiff . . . as a matter of law, [Defendant] provided Plaintiff with a reasonable accommodation." *Alexidor v. Donahoe*, No. 11-cv-9113, 2016 U.S. Dist. LEXIS 136026, at *19 (S.D.N.Y. Sept. 30, 2016).[18]

---

[18] Following Plaintiff's reaction to the FluBlok vaccine, Defendant granted Plaintiff a medical exemption to the flu vaccine requirement, which remains in place to date.  That Plaintiff currently is exempt from the policy underscores Defendant's good faith efforts to accommodate Plaintiff

Plaintiff has not, and cannot, produce any evidence to create a genuine issue of material fact as to whether this accommodation (i.e., evaluation by the IVDRB, followed by referral to an allergist who conducted the FluBlok skin test, followed by administration of the FluBlok vaccine) was reasonable.[19] Plaintiff's only arguments appear to be that Defendant should have granted Plaintiff an exemption as they had in years past, and that Plaintiff's reaction to the FluBlok vaccine is somehow evidence that Defendant's decision to offer FluBlok was unreasonable. As noted above, however, Defendant was not under any obligation to continue exempting Plaintiff from the flu vaccine requirement, as her 2017 Exemption Request form indicated that a continued exemption may not have been necessary.

Nor is Plaintiff's subsequent reaction to the FluBlok vaccine sufficient to raise a genuine issue of fact as to the reasonableness of Defendant's offered accommodation. While Plaintiff's reaction is unfortunate, as noted above, her reaction is irrelevant to the reasonable accommodation analysis which preceded it.  Moreover, it is further irrelevant as "the remedy for this injury is a Workers' Compensation claim . . .. [a workplace] injury does not give rise to a claim for failure to accommodate . . . ." *Micari v. TWA*, 43 F.Supp.2d 275, 283 (E.D.N.Y. 1999) (granting summary judgment on failure to accommodate claim where, *inter alia*, employee alleged he was reinjured as a result of being denied a workplace accommodation) (citing *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F.Supp. 667, 682 (S.D.N.Y. 1995) ("New York's Workers' Compensation Law

---

and reiterates that, upon notice of an actual medical contraindication, Defendant provides exemptions to its flu vaccine requirement.

[19] After reviewing Plaintiff's records, Defendant's expert, Gary Stadtmauer, M.D., concluded that Defendant's offer of the FluBlok vaccine to Plaintiff was reasonable and medically sound and, if anything, Dr. Abdeldaim was overly cautious in offering Plaintiff the FluBlok skin test prior to vaccination. (DSOF ¶163; Briton Aff., Exhibit G). Plaintiff has not rebutted this expert conclusion, nor has she offered any evidence to suggest, let alone prove, that it was inappropriate to offer her the FluBlok vaccine.

provides the exclusive remedy for unintentional employment related injuries")).

The Court's decision in *Chumra v. Monongalia Health Sys.*, No. 17-cv-222, 2019 U.S. Dist. LEXIS 134373 (N.D.W.Va. Aug. 9, 2019) is instructive as to the reasonableness of the Hospital's actions, including requiring the FluBlok vaccine after Plaintiff tested negative on the FluBlok skin test. While not analyzed in the failure to accommodate context, the Court considered whether a hospital discriminated against an employee by terminating her employment for not complying with the its mandatory flu vaccine policy, which required employees to provide "documented allergy testing to indicate an immediate hypersensitivity reaction to the influenza vaccine or a component of the vaccine" in order to obtain an exemption from the vaccine requirements. *Id.* at *8. The Court concluded that, because the plaintiff "never provided [defendant] with sufficient documentation to establish a contraindication to some component of the influenza vaccination," the hospital had a legitimate, non-discriminatory business reason for terminating her employment. *Id.* at *23. The same analysis applies on the facts here – there was no basis to provide Plaintiff with an accommodation in the absence of a positive FluBlok skin test. As she tested negative, she was reasonably required to receive the FluBlok vaccine.

The accommodation the Hospital provided may not have been Plaintiff's first choice, but it was plainly reasonable which, as noted, ends this Court's inquiry.  While receiving the flu shot may have triggered an adverse response in Plaintiff (whether allergic, anxiety-based, or otherwise), any damages arising from that response is compensable, if at all, under the Workers Compensation scheme, not through a failure to accommodate claim.

## III.   PLAINTIFF'S ADA AND NYSHRL DISABILITY DISCRIMINATION CLAIMS MUST BE DISMISSED

In reviewing discrimination claims under the ADA and NYSHRL, the well-settled burden shifting analysis applies: (1) Plaintiff must establish a *prima facie* case of discrimination, (2) if

23

Plaintiff meets her *prima facie* case, the burden of production shifts to Defendant to offer non-discriminatory reasons for its decision(s), and (3) Plaintiff then bears the burden to demonstrate that the articulated reasons are merely pretextual and that the real reason is discrimination. *See McDonald Douglas Corp. v. Green*, 411 U.S. 792 (1973); *McBride,* 583 F.3d at 96; *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 169 (2d Cir. 2006). Here, Plaintiff's claims for disability discrimination also fail as Plaintiff was not disabled; was not regarded as disabled; and did not suffer from any adverse employment action. Even if she could establish a *prima facie* case, Plaintiff cannot prove that Defendant's stated reasons for its actions were the "but for" cause of any alleged adverse actions.

### A.      Plaintiff Cannot Establish A *Prima Facie* Case Of Disability Discrimination

To establish a *prima facie* case, a Plaintiff must demonstrate that: "(1) the defendant is covered by the ADA; (2) Plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) Plaintiff was qualified to perform the essential functions of the job: and (4) Plaintiff suffered from an adverse employment action because of his disability or perceived disability." *Capobianco v. City of New York*, 422 F. 3d 47, 56 (2d Cir. 2005).

Here, Plaintiff fails to meet all but the third prong of her *prima facie* case. Plaintiff was not disabled, nor was she regarded as disabled. An individual is "regarded as" having a disability if "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "When a Plaintiff brings a claim on the basis that his employer regarded him as disabled, 'the decisive issue is the employer's perception of his or her employee's alleged impairment.'" *Sacks v. Gandhi Eng'g, Inc*. 999 F. Supp. 2d 629, 633 (S.D.N.Y. 2014) (quoting *Giordino v. City of New York*, 274

24

F.3d 740, 748 (2d Cir. 2001)).

The facts here do not support such a claim. Defendant referred Plaintiff to Dr. Abdeldaim because it did not know whether Plaintiff had an impairment, and offered Plaintiff the FluBlok vaccine because it believed that Plaintiff's prior reaction to the flu vaccine did not necessitate a medical exemption. The notion that she either was disabled or was regarded as disabled is utterly belied by the outcome of the exemption process which, in all stages, was designed to identify if Plaintiff (or, for that matter, any other Hospital employee) suffered any medical condition so as preclude administration of a flu shot. This, we submit, is the antithesis of discrimination.

Moreover, Plaintiff did not suffer from any adverse employment action. She is an incumbent employee, who remains employed at Defendant to date with no changes to the terms and conditions of her employment. The only purported "adverse action" is Defendant's "threat" to terminate her employment if she did not comply with the Immunity Requirements policy and her two-day paid "suspension" (which took place over a weekend). Neither is an adverse employment action. It is well-settled that "a threat of termination, without more, is not an adverse employment action" *Pierre v. Napolitano*, 958 F.Supp.2d 461, 476 (S.D.N.Y. 2013); *see also Weisbecker v. Sayville Union Free Sch. Dist.*, 890 F.Supp.2d 215, 219 (E.D.N.Y. 2012) ("This threat of termination alone . . . does not, by itself constitute an adverse employment action"). Nor is a suspension with pay. *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (suspension with pay is not, in most circumstances, an adverse action).

Even if they were, Plaintiff could not prove that Defendant's actions were taken with discriminatory animus. Defendant informed Plaintiff that her employment would be terminated because she did not comply with the Immunity Requirements policy, as it did with every other employee who did not comply, regardless of disability (or any other protected characteristic). It

suspended Plaintiff with pay as an alternative to termination and to provide Plaintiff with the opportunity to see Dr. Abdeldaim to receive the FluBlok skin test. Such decision evidences a desire to accommodate Plaintiff's medical condition, not discriminate against her.

### B. Defendant Articulated A Legitimate, Non-Discriminatory Business Reasons For Its Actions, Which Plaintiff Cannot Rebut As Pretext

Assuming, *arguendo*, that Plaintiff could establish her *prima facie* case, Defendant has met its burden to articulate a legitimate, non-discriminatory business reason for its actions. It is undisputed that the Hospital's motivation for the Immunity Requirements policy was patient safety and the protection of its employees. To ensure the effectiveness of this policy, Defendant terminates employees who refuse to comply after being given ample opportunity to do so. As the record evidences, Defendant informed Plaintiff of her termination only after she refused to take the FluBlok skin test to determine whether an exemption was necessary. It opted to suspend Plaintiff with pay, rather than terminate, in order to provide her with the opportunity to comply with the Immunity Requirements policy.

Given these legitimate, non-discriminatory reasons, Plaintiff must prove that the stated reasons were not Defendant's true basis, and that discrimination as the real reason. Ultimately, she must prove that her disability was the "but for" cause of Defendant's actions. *Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019). She cannot do so, as there is simply no evidence in the record to suggest that Defendant acted out of discriminatory animus, let alone that it acted solely because Plaintiff was (or perceived to be) disabled. Rather, at all times Defendant was motivated by patient safety and the orderly effectuation of its policies in support.

## IV. PLAINTIFF'S RETALIATION CLAIMS MUST FAIL

To survive summary judgment on her retaliation claim under the ADA, Plaintiff must show that a genuine question of material fact exists as to whether: (1) she was engaged in an activity

protected by the ADA; (2) Defendant was aware of that activity; (3) an employment action adverse to her occurred; and, (4) there existed a causal connection between the protected activity and adverse employment action. *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999).

Plaintiff's retaliation claim fails on virtually every score. Other than her request to be accommodated as she wished (by simply granting her an exemption despite an absence of supporting medical evidence), she identifies no protected activity.[20] Nor can she identify an adverse employment action (there was none and she remains employed without further incident), let alone any nexus between protected activity (none) and an adverse employment action (also, none). If anything, Plaintiff appears to hinge her retaliation claim solely on her allegations that she requested an accommodation; that accommodation was purportedly denied; and, she was threatened with termination and suspended (with pay) for two days. Even if denying a request for accommodation is an adverse employment action, Plaintiff cannot artfully plead her failure to accommodate claim as a retaliation claim by arguing that her request for an accommodation caused Defendant not to accommodate her. Some other adverse employment action is required. *Wenc v. New London Bd. of Educ.*, No. 14-cv-0840, 2016 U.S. Dist. LEXIS 108736, *53 (D. Conn. Aug 16, 2016) (denying retaliation claim where only alleged retaliation is denying the requested accommodation). Needless to say, there was no adverse employment action here.

## V.   **PLAINTIFF'S NYCHRL CLAIM ALSO MUST BE DISMISSED**

The "[d]ecision to exercise supplemental jurisdiction is within the sound discretion of the

---

[20] Under both the NYSHRL and the NYCHRL, "a request for reasonable accommodation is not a protected activity for purposes of a retaliation claim". *Witchard v Montefiore Med. Ctr.*, 103 A.D.3d 596, 596 (1st Dep't 2013); *see also McKenzie v. Meridian Capital Grp., LLC,* 35 A.D.3d 676, 677 (2d Dep't 2006) (plaintiff did not state a cause of action for retaliatory discharge where only alleged protected activity was requesting an accommodation). Plaintiff does not allege any other protected activity, and thus cannot state a retaliation claim under either statute. *Pezhman v. City of New York*, 47 A.D.3d 493, 494 (1st Dept. 2008).

district court and involves an assessment, at each stage of the case, of the values of judicial economy, convenience, fairness and comity." *Seivright v. Montefiore Med. Ctr.*, No. 11-cv-8934, 2014 U.S. Dist. LEXIS 30137 at *43 (S.D.N.Y. 2014) (citing *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F. 3d 106, 117-18 (2d Cir. 2013)). While we recognize that courts, including this Court, often dismiss state[21] and local claims without prejudice upon dismissal of federal claims for lack of supplemental jurisdiction, we urge the Court here to address and dismiss Plaintiff's NYCHRL claims with prejudice here as well. *Wellington,* 2017 U.S. Dist. LEXIS at *22 (dismissing with prejudice NYCHRL claim).

Pursuant to the Restoration Act, "courts must analyze NYCHRL claims separately and independently from any federal and state law claims … construing the NYCHRL's provisions 'broadly in favor or discrimination plaintiffs, to the extent that such a construction is reasonably possible'". *Mihalik*, 715 F.3d at 109 (citations omitted). Failure to accommodate claims are evaluated under the same standards as ADA and NYSHRL claims, though the NYCHRL defines disability more broadly than its federal and state counterparts to include "any physical, medical, mental or psychological impairment, or a history or record of such impairment." *Noll*, 787 F.2d at 94; N.Y.C. Admin. Code § 8-107(1)(a). For the reasons noted above, Plaintiff does not meet even this definition, as there is no evidence that she was impaired, and nothing in the Restoration Act suggests that it was intended to render the NYCHRL so broad as to include an employee who on one occasion, more than 15 years earlier, experienced shortness of breath and palpitations for less than half an hour – a reaction to a different vaccine and which required no intervention. Regardless, even if she meets the definition, the Hospital's proffered accommodation is as reasonable under the NYCHRL as it is under the ADA/NYSHRL.

---

[21] Plaintiff's NYSHRL claim, which is analogous to her ADA claim, should be dismissed.

In the context of discrimination claims, under the NYCHRL, Plaintiff must establish that she was "treated less well" due discriminatory intent (*Kops v. PPM Am., Inc.*, No. 15-cv-1584, 2016 U.S. Dist. LEXIS 177692 at *12 (S.D.N.Y. 2016)), but "defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory … motives." *Mihalik*, 715 F. 3d at 113. The *McDonnell-Douglas* burden-shifting paradigm applies and, while subject to a "mixed motive" (rather than a "but for") standard, Plaintiff must nevertheless prove that she was impaired and that she was treated "less well" than her non-impaired counterparts. M*elman v. Montefiore Med. Ctr.*, 98 A.D. 3d 107, 946 N.Y.S. 2d 27, 31 (1st Dept. 2012).  Here, all employees were required to comply with the Immunity Requirements policy or obtain an approved exemption, and employees who did not comply were informed they would be terminated absent compliance. Plaintiff cannot identify any employee who was not required to comply fully with the Hospital's flu vaccine requirement, either through receiving the vaccine or obtaining an exemption, and thus cannot assert a claim under even the most expansive interpretation of the NYCHRL. In short, she cannot establish that she was treated "less well" than anyone, let alone others who allegedly were not impaired. Accordingly, Plaintiff's NYCHRL claim also should be dismissed with prejudice.

## VI.    PLAINTIFF'S NYSHRL AND NYCHRL CLAIMS ARE BARRED BY THE NEW YORK WORKERS' COMPENSATION LAW

Plaintiff's claims are nothing more than an attempt to repackage a Workers' Compensation claim into a reasonable accommodation claim. By focusing on her reaction to the FluBlok vaccine, Plaintiff is seeking damages for the pain and suffering she claims to have experienced as a result of being given the FluBlok vaccine. As Plaintiff is seeking or claiming damages for being injured in the course of her employment at the Hospital, her claims are precluded by the exclusivity provisions of the New York Workers' Compensation Law. *Schapiro v. N.Y. City Dep't of Health*, 179 F. Supp. 2d 170, 177 (S.D.N.Y. 2001) ("[w]hen an employee 'is injured by the negligence or

wrong of another in the same employ' the exclusive remedy for such injury is through the Worker's Compensation Law."); *Arroyo v. Westlb Admin., Inc.*, 54 F. Supp. 2d 224, 232 (S.D.N.Y. 1999) ("recovery for accidental injuries arising out of and in the course of employment is governed by the Workers' Compensation Law"). On this basis, as well, Plaintiff's state and city law claims must be dismissed.

## CONCLUSION[22]

For all of the foregoing reasons, Defendant's Motion for Summary Judgment should be granted and the Complaint dismissed with prejudice in its entirety.

Dated: Melville, New York
      December 13, 2019

                                Respectfully submitted,

                                JACKSON LEWIS P.C.
                                *Attorneys for Defendant*
                                58 South Service Road, Suite 250
                                Melville, New York 11747
                                (631) 247-0404

        By:              /s/_____
                                Roger H. Briton Esq.
                                Kathryn J. Barry Esq.

---

[22] Although not plead, Plaintiff's response to Defendant's request for leave to file this motion (Dkt 11), appears to claim that the IVDRB's referral of Plaintiff to Dr. Abdeldaim was an unlawful medical examination. That claim (even if timely, which it is not) must fail as well. While employers are prohibited from "requiring their employees to undergo a medical examination for purpose of determining whether such an employee is an individual with a disability or as to the scope or nature of the disability," 42 U.S.C. § 12012(d)(4)(A), there is an exception for examinations that are "job related and consistent with business necessity." *Id*. Both the ADA's implementing regulations and courts make clear that this exception includes instances where an examination is necessary to determine "whether an accommodation is required by law." *See* 29 C.F.R. § 1360.14(c); *Donfrio v. N.Y. Times*, No. 99-cv-1576, 2001 U.S. Dist. LEXIS 13788, at **20-21 (S.D.N.Y. Aug. 24, 2001) (medical examination permitted to assess need for accommodation); *Lent v. Goldman Sachs & Co.*, No. 97-cv-9413, 1998 U.S. Dist. LEXIS 20371, at *26 (S.D.N.Y. Dec. 29, 1998) ("inquiry may be necessary to help determine whether an accommodation is required under the ADA" and thus permitted Here, Plaintiff was referred to Dr. Abdeldaim to consider whether she required an exemption or what other accommodations might be possible or necessary. This falls clearly within the type of examination permitted under the law.