UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASMINE NORMAN,

                                    Plaintiff,

            -against-

NYU LANGONE HEALTH SYSTEM,

                                    Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:  _____
DATE FILED:  _9/30/2020_
```

19 Civ. 67 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Jasmine Norman, brings this action against her employer, Defendant, NYU

Langone Health System, alleging that Defendant violated her rights under the Americans with

Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*; the New York State Human Rights

Law (the "NYSHRL"), N.Y. Exec. L. § 296, *et seq.*; and the New York City Human Rights Law

(the "NYCHRL"), N.Y.C. Admin. Code § 8-101, *et seq.*  Compl. ¶ 1, ECF No. 1.  She claims to

have a disability—an allergy to the flu vaccine—and alleges failure to accommodate her

disability, disability discrimination, and retaliation.  Defendant moves for summary judgment.

ECF No. 46.  For the reasons stated below, Defendant's motion is GRANTED as to Plaintiff's

claims under the ADA.  Plaintiff's state and local law claims are DISMISSED without prejudice.

## BACKGROUND

The facts discussed in this opinion are undisputed except where otherwise noted.  The

Court has drawn all reasonable inferences in favor of Plaintiff, as the nonmovant.  *See Costello v.

City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).[1]

---

[1]  The following facts are drawn from the parties' pleadings and submissions, including the complaint, Defendant's
Rule 56.1 statement of undisputed facts and Plaintiff's response, Plaintiff's statement of additional material facts and
Defendant's response, and the parties' declarations.  Facts in dispute are so noted.  Citations to a paragraph in
Defendant's Rule 56.1 statement also include Plaintiff's response, and citations to a paragraph in Plaintiff's
counterstatement include Defendant's response.

Plaintiff, Jasmine Norman, has been employed by Defendant, NYU Langone Health System, since April 25, 2011 when she was hired as a Clinical Database Specialist. 56.1 Stmt. ¶ 1, ECF No. 63-1. Over the years, she rose through the ranks, attaining in 2019 the title of Senior Project Manager, Hospital Operations. *Id.* ¶ 4. Her work has not involved direct contact with patients, nor has she worked in areas where patients are typically present. *Id*. ¶ 6.

In 2013, Defendant implemented an Immunity Requirements Policy (the "IRP"), requiring that employees in areas where patients may be present either receive an annual flu vaccine or obtain an approved exemption based on a medical, religious, or personal reason. *Id.* ¶ 18. Until 2016, Defendant granted all exemption requests for any reason. *Id*. ¶ 26.

In 2016, Defendant established the Influenza Vaccination Declination Review Board (the "Review Board") to review exemption requests. *Id.* ¶ 49. The Review Board reviewed all requests without personally identifiable information. *Id*. ¶ 51. That same year, Defendant amended the IRP, mandating that all employees receive the flu vaccine and eliminating exemptions based on personal reasons. *Id.* ¶¶ 27–28. Employees seeking an exemption had to submit a standardized form to be completed by their physician (the "Request Form"). *Id.* ¶ 51. The 2016 Request Form asked whether the patient had an anaphylactic or severe allergic reaction after a previous influenza vaccine, and provided a space to describe the reaction. *Id.* ¶ 52; 2016 Exemption Request Form, ECF No. 47-1 at 27. In 2016, over ninety percent of medical exemption requests were granted based on a stated "anaphylactic or severe allergic reaction after a previous influenza vaccine." 56.1 Stmt. ¶ 55.

In 2017, Defendant issued an amended IRP (the "2017 IRP"). October 2017 IRP, ECF No. 47-1 at 23–25. It provided that Employees denied an exemption had to be vaccinated, and that those who were denied an exemption but declined the vaccine would be subject to discipline,

including discharge.  *Id.*  The 2017 IRP provided that previously exempted employees were only required to attest that the medical condition or religious belief upon which their exemption was granted had not changed.  *Id.* at 25.  The 2017 Request Form asked, in relevant part, whether the patient is allergic to eggs, has other allergies, had a previous reaction to the flu vaccine, and if so, the date, duration, and description.  The form also required the doctor to indicate whether the patient had any other medical contraindications, whether such reaction was anaphylactic or severe, and whether an intervention or other treatment was required.  2017 Exemption Request Form, ECF No. 47-1 at 32–33.

After the implementation of the 2017 IRP, the Review Board denied exemption requests based solely on an egg allergy and offered the employee FluBlok—the first flu vaccine developed without egg proteins, gelatin, latex, formaldehyde, preservatives, or antibiotics—in lieu of the traditional, egg-based vaccine.  56.1 Stmt. ¶ 59–60.  FluBlok does not have any of the same ingredients as traditional, egg-based versions of the vaccine.  *Id.* ¶ 41.  The Review Board referred employees with purported allergies to Amina Abdeldaim, M.D., Defendant's Clinical Director of Inpatient Allergy, to determine whether FluBlok would be a suitable alternative for the employee.  *Id.* ¶¶ 60–61.  Dr. Abdeldaim examined employees and, depending on the circumstances, conducted a FluBlok skin test.  *Id.* ¶ 62.  A positive skin test tends to suggest that a patient is allergic to some component within FluBlok.  *Id.* ¶ 65.  If an employee tested negative, Dr. Abdeldaim offered the FluBlok vaccine.  *Id.*

Plaintiff characterizes her disability as an allergy to the flu vaccine.  Compl. ¶ 1.  During childhood, she reacted adversely to the vaccine, but does not recall that incident.  56.1 Stmt. ¶ 74.  Around 2001, while in nursing school, Plaintiff was vaccinated a second time, and suffered another adverse reaction.  *Id.* ¶ 75.  This incident occurred prior to the availability of FluBlok.

*Id*. ¶ 103.  Plaintiff began experiencing shortness of breath and chest palpitations about fifteen to twenty-five minutes after receiving the vaccine, with the symptoms lasting around ten to twenty minutes.  Pl. 56.1 Counterstmt. ¶ 10, ECF No. 65; Pl. Dep. Tr. at 15:2–17:13, ECF No. 47-2.  Plaintiff was driving when the symptoms began and she paused on the road as her symptoms continued.  Pl. 56.1 Counterstmt. ¶ 11; Pl. Dep. Tr. at 18:5–12.  Plaintiff proceeded to drive home, a short distance away.  Pl. 56.1 Counterstmt.  ¶ 12.  Her symptoms resolved without medical intervention.  *Id.* ¶ 16; 56.1 Stmt. ¶ 75; Pl. Dep. Tr. at 17:17–21, 18:21–24.

In 2010 or 2011, Plaintiff described her 2001 reaction to her primary care physician, Vinod Aggarwal, M.D.  Pl. Dep. Tr. at 27:13–28:14.  Dr. Aggarwal advised Plaintiff to not receive the flu vaccine again.  *Id.* at 75:19–76:8.  She did not undergo further medical testing or evaluation to determine whether she had an allergy to the flu vaccine or any of its components.  56.1 Stmt. ¶ 76; Pl. 56.1 Counterstmt. ¶ 23.

Prior to 2016, Plaintiff made verbal exemption requests as required by Defendant's policy at that time.  In 2016, she submitted to Defendant her first written request for a medical exemption.  56.1 Stmt. ¶ 80.  Dr. Aggarwal signed the form, indicating that Plaintiff had an "anaphylactic or severe allergic reaction after a previous influenza vaccination," but offered no details about the reaction.  2016 Exemption Request Form.  *Id*. at 82.  Defendant approved her request, and Plaintiff wore a surgical mask for the duration of the 2016 flu season.  Pl. 56.1 Counterstmt. ¶¶ 38, 39.

On November 1, 2017, Plaintiff emailed Defendant, asking whether she needed to submit an exemption request for the 2017 flu season, and stating that her condition remained the same.  56.1 Stmt. ¶ 92; Pl. 56.1 Counterstmt. ¶ 43.  Having received no response, on November 10, 2017, Plaintiff submitted a 2017 Request Form completed by Dr. Aggarwal.  56.1 Stmt. ¶ 95.  He

indicated that Plaintiff was allergic to eggs, and that she had a previous reaction to the flu

vaccine.  2017 Exemption Request Form.  The form stated that the reaction occurred in 2001,

that it persisted for three days,[2] that Plaintiff experienced palpitations and shortness of breath,

and that Dr. Aggarwal considered the reaction to be an anaphylactic or otherwise severe allergic

reaction.  *Id.*  He did not list any other medical contraindications.  *Id.*  Plaintiff testified that Dr.

Aggarwal said it "would be best to check off" that she was allergic to eggs.  Pl. Dep. Tr. at 91:5–

17.

On November 14, 2017 and December 6, 2017, the Review Board emailed Plaintiff

informing her that it had reviewed her Request Form and that they were referring her to Dr.

Abdeldaim for a follow-up.  Def. Nov. 14, 2017 Email, ECF No. 47-1 at 39; Def. Dec. 6, 2017

Email, ECF No. 47-1 at 50; 56.1 Stmt. ¶ 106–12.  Plaintiff responded to both emails, asking

whether the referral was mandatory and requesting a copy of the written policy.  Pl. Nov. 14,

2017 Email, ECF No. 47-1 at 39; 56.1 Stmt. ¶ 107; Pl. Nov. 15, 2017 Email, ECF No. 47-1 at

38–39; 56.1 Stmt. ¶ 108; Def. Dec. 6, 2017 Email, ECF No. 47-1 at 50; 56.1 Stmt. ¶ 112–14.

On January 11, 2018, Michael Phillips, M.D., Defendant's Chief Hospital Epidemiologist

and Director of Infection Prevention Control, emailed Plaintiff's supervisor, indicating that

Plaintiff's name would be referred to the human resources department for possible termination

from employment if she did not make an appointment to see Dr. Abdeldaim by January 15, 2018.

56.1 Stmt. ¶ 121; Phillips Jan. 11, 2018 Email, ECF No. 47-1 at 52.

On January 12, 2018, Plaintiff arranged an appointment, and visited Dr. Abdeldaim's

office on February 7, 2018.  56.1 Stmt. ¶¶ 126–27.  There, Plaintiff described her history with the

flu vaccine and her reaction to the vaccine both as a child and in 2001.  Pl. Dep. Tr. at 132:4–15.

---

[2] Plaintiff was not sure why the 2017 Request Form stated that she experienced a three-day reaction, because her symptoms had subsided once she reached home.  Pl. Dep. Tr. at 91:23–92:25.

Dr. Abdeldaim recommended that she receive the FluBlok skin test.  *Id*. at 132:25–133:15.

Plaintiff declined.  *Id*. at 135:9–15; 56.1 Stmt. ¶ 128–30; Abdeldaim Feb. 7, 2018 Email, ECF

No. 47-1 at 62.

By email dated February 9, 2018, the Review Board notified Plaintiff that, after

reviewing her Request Form and the information provided by Dr. Abdeldaim, Plaintiff's

exemption was denied.  56.1 Stmt. ¶ 132.  The Review Board indicated that she would be

referred to human resources for failure to comply with the 2017 IRP.  *Id.*  A Labor and Employee

Relations representative informed Plaintiff's supervisor that Plaintiff would be terminated later

in the day.  *Id.* ¶ 133.  That afternoon, Plaintiff and her supervisor met with the Director of

Operations at Defendant's Occupational Health Services to discuss Plaintiff's exemption request

and her possible termination.  *Id*. ¶¶ 140–41.  At this meeting, Plaintiff stated she would get

vaccinated that day to avoid termination.  *Id*.  Rather than having Plaintiff receive the traditional

flu vaccine, the Review Board arranged for Plaintiff to receive the FluBlok skin test.  *Id*. ¶ 142.

Plaintiff was suspended with pay until her appointment to do so, on February 12, 2018.  *Id*.

¶¶ 143, 144.

Plaintiff received the FluBlok skin test on February 12, 2018; her reaction was negative.

*Id*. ¶ 146.  Plaintiff was then given the FluBlok vaccine.  *Id*. ¶ 149.  Forty minutes later, she

began experiencing shortness of breath and palpitations.  *Id.*  Dr. Abdeldaim administered

albuterol and an EpiPen, and Plaintiff was transported to the emergency department.  *Id*. ¶ 150.

Plaintiff's emergency room medical record indicates: "patient received flu shot today, 40 min

later patient reported SOB [shortness of breath]/palpitations, tachy to 140, epi pen given in field,

+SOB at present."  E.D. Records at 2, ECF No. 62-4.  Under "allergic reaction," the record

states, "presenting symptoms: difficulty breathing, no difficulty swallowing, no itching, no rash,

no swelling, and no wheezing; severity: mild; context: medications; context: no nuts; relieved by Epinephrine [EpiPen]." *Id*. at 3.  Her discharge notes state, "Clinical impression: Allergic disorder, initial encounter (primary diagnosis); discharge reassessment: patient remains tearful/anxious but otherwise asymptomatic; condition at discharge: good." *Id*. at 5.  Elsewhere, her assessment plan states: "presentation inconsistent with allergic reaction though confounded by empiric epipen administration prior to arrival," and "less likely allergic reaction, possible panic attack." *Id*. at 4–5.

Since returning to work on February 20, 2018, Plaintiff has not experienced any retaliation. 56.1 Stmt.  ¶¶ 156–58; Pl. Dep. Tr. at 192:23–193:4.  She believes that there was confusion surrounding her exemption request, but that her direct supervisors had her "best interest at heart."  Pl. Dep. Tr. at 65:13–19, 206:6–20, 211:12–212:9, 222:22–223:7.  Members of the Review Board also concede that there were significant miscommunications between the Review Board and Plaintiff.  *See* Salvati Dep. Tr. at 143:18–25, ECF No. 62-14.  On February 12, 2018, Defendant approved Plaintiff's medical exemption request, and has exempted her each year since.  56.1 Stmt. ¶ 159.

Over the course of her employment, Plaintiff had indicated, on various forms required by Defendant, that she had not had "any serious problems with" shortness of breath, wheezing, or chest pain, ECF No. 47-1 at 3; Pl. Dep. Tr. at 33:10–19, that she had "no known allergies,"  Pl. Dep. Tr. 36:7–12; ECF No. 47-1 at 5, and that she was not disabled,  Pl. Dep. Tr. 33:4–14.

## DISCUSSION

I.   <u>Legal Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.

7

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

"The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party."  *Conn. Ironworkers Emps. Ass'n, Inc. v. New Eng. Reg'l Council of Carpenters*, 869 F.3d 92, 98–99 (2d Cir. 2017); *see also* Fed. R. Civ. P. 56(c)(1).  If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary-judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact.  *Celotex*, 477 U.S. at 322–23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d at 105.

II.    ADA Claims

A.  Reasonable Accommodation

Plaintiff argues that she is an individual with a disability—an allergy to the flu vaccine—and that Defendant failed to reasonably accommodate her disability by not allowing her to wear a face mask during the 2017 flu season in lieu of receiving a flu vaccine.  For the reasons below, the Court concludes summary judgment in favor of Defendant is warranted on this claim.

1.  Legal Standard

The ADA requires that an employer afford an employee a reasonable accommodation for a known disability unless doing so would impose an undue hardship on the employer.  *See* 42 U.S.C. § 12112(b)(5)(A).  "Discrimination in violation of the ADA includes, *inter alia*, 'not

making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'"  *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)).  A qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8)).  Courts look to whether the plaintiff was disabled at the time the accommodation was sought.  *See Emanuel v. New York*, No. 8 Civ. 1250, 2009 WL 4277075, at *7 & n.7 (S.D.N.Y. Nov. 25, 2009) (finding medical incident two months after request for an accommodation not probative as to whether plaintiff was disabled at the time an accommodation was sought); *Van Ever v. N.Y. State Dep't of Corr. Servs.*, No. 99 Civ. 123448, 2000 WL 1727713, at *3 (S.D.N.Y. Nov. 21, 2000) ("Thus, a plaintiff must first demonstrate substantial impairment of a major life activity at the time the accommodation is sought to trigger the reasonable accommodation requirement of the ADA.")

To establish a prima facie case for failure to accommodate, a plaintiff must demonstrate that:

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McBride*, 583 F.3d at 97 (internal quotation marks, citation, and alterations omitted).  "The plaintiff bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment."  *Id.* Under the burden-shifting framework applied in failure to accommodate cases, after the plaintiff satisfies her burden of "production and persuasion as to the existence of an accommodation that is facially reasonable," the burden "shifts to the defendant to rebut the reasonableness of the proposed accommodation," which "is in essence equivalent to the burden of showing, as an

affirmative defense, that the proposed accommodation would cause the defendant to suffer an undue hardship." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 76 (2d Cir. 2016) (internal quotation marks, citation, and alterations omitted).

The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities of [an] individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1). To establish a disability, a plaintiff must: (1) "show that she suffers from a physical or mental impairment"; (2) "identify the activity claimed to be impaired and establish that it constitutes a major life activity"; and (3) "show that her impairment substantially limits the major life activity previously identified." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002) (internal quotation marks and citation omitted). An impairment that is episodic or in remission can qualify as a disability under the ADA. 42 U.S.C. § 12102(4)(D). The impairment must, however, "substantially limit a major life activity when active." *Id.*; *see Morea v. Fanning*, No. 15 Civ. 2720, 2017 WL 3393843, *7 (S.D.N.Y. Aug. 4, 2017). "If [a plaintiff] fails to satisfy each of these three prongs, her discrimination claim must be dismissed." *Felix v. N.Y.C. Transit Auth.*, 154 F. Supp. 2d 640, 653 (S.D.N.Y. 2001).

Under the ADA, "major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," 42 U.S.C. § 12102(2)(A), as well as the operation of major bodily functions, including "neurological, brain, respiratory, circulatory, endocrine, and reproductive functions," *id.* § 12102(2)(B).

To determine what constitutes a "substantial limitation" of a major life activity, courts have looked to the EEOC regulations implementing the ADA.  Although the regulations are not binding, courts in the Second Circuit afford them significant deference.  *See Francis v. City of Meriden*, 129 F.3d 281, 283 n.1 (2d Cir. 1997).  "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  29 C.F.R. § 1630.2(j)(1)(ii).  Though "the effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of [the ADA]," *id*. § 1630.2(j)(1)(ix), the duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity, *id*. § 1630, app.  "Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe."  *Id.*

2.   Analysis

Plaintiff claims that, when given the flu vaccine, she experiences shortness of breath and chest palpitations, which impair the major life activity of breathing, as well as anxiety and stress. *See* Pl. Opp. at 10, 14, 17, ECF No. 58.  Defendant argues that Plaintiff cannot establish that she had a qualifying disability under the ADA when she requested an accommodation on November 10, 2017.  Def. Mem. at 12–15.

The Court agrees with Defendant.  Even assuming Plaintiff's allergy to the flu vaccine constitutes an impairment that limits the major life activity of breathing, she has nevertheless failed to show that this impairment substantially limited her breathing at the time she sought an accommodation, *see Weixel*, 287 F.3d at 147, and as such, it cannot be said that Plaintiff had a qualifying disability that Defendant failed to accommodate.  Plaintiff points to two adverse reactions to the flu vaccine that she experienced prior to November 10, 2017: her adverse

11

reaction as a child, 56.1 Stmt. ¶ 74, and her second reaction after being vaccinated in nursing

school, *id*. ¶ 75.  The latter flu shot brought on shortness of breath and chest palpitations while

driving.  Pl. 56.1 Counterstmt.  ¶ 12.  But Plaintiff testified that she was able to continue driving

home after a brief pause on the road, Pl. Dep. Tr. at 17:22–18:17, and her reaction subsided after

about ten to twenty minutes, *id.* at 79:7–12; Pl. 56.1 Counterstmt.  ¶ 15.  Plaintiff concedes that

she did not seek further medical attention to determine whether she suffered from an allergy to

the flu vaccine because "the reaction itself never occurred again."  Pl. Dep. Tr. at 78:21–22,

18:21–24.  Consistent with the mildness of her symptoms in 2001, Plaintiff stated in 2011 on a

"health service preplacement examination form" required by Defendant that she had not had

"any serious problems with" shortness of breath, wheezing, or chest pain.  ECF No. 47-1 at 3.  In

2016, she indicated on an "occupational health service annual assessment" that she had "no

known allergies."  ECF No. 47-1 at 5; Pl. Dep. Tr. at 36:7–12.  Plaintiff testified that she "never

experienced having palpitations or shortness of breath" after she stopped getting flu shots.  Pl.

Dep. Tr. at 79:2–6.

    Based on this record, the Court concludes there is no genuine dispute of fact as to

whether Plaintiff had a substantial limitation of a major life activity at the time she sought an

accommodation.  Indeed, "courts have been careful to distinguish impairments which merely

*affect* major life activities from those that *substantially limit* those activities."  *See Ryan v. Grae

& Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998) (emphasis added).  For example, courts in this

circuit have held that a substantial limitation on breathing is established when a plaintiff puts

forward evidence of episodes requiring medical interventions or chronic breathing problems.

*Compare Gorbea v. Verizon N.Y., Inc.*, No. 11 Civ. 3758, 2014 WL 917198, at *8 (S.D.N.Y.

Mar. 10, 2014) (finding plaintiff's asthma, which was exacerbated by high temperatures,

chemicals, and dust, did not substantially limit her breathing, despite a history of asthma, use of

an inhaler, and a diagnosis of reactive airway dysfunction syndrome and bronchospasm);

*Boughton v. Town of Bethlehem*, No. 13 Civ. 1583, 2015 WL 5306077, at \*5–6 (N.D.N.Y. Sept.

10, 2015) (finding plaintiff's "uncontrolled hypertension," exacerbated by extreme weather, did

not substantially limit his ability to breathe when it resulted in "infrequent breathing problems"

of chest tightness and breathing difficulties), *with Hoeffner v. Cnty. of Orange*, No. 17 Civ. 9344,

2020 WL 1165851, \*6 (S.D.N.Y Mar. 10, 2020) (finding plaintiff who suffered nineteen asthma

attacks during a three-month period caused by her exposure to mold had a disability within the

meaning of the ADA); *Murtha v. N.Y. State. Gaming Comm'n*, 2019 WL 4450687, \*10

(S.D.N.Y. Sept. 17, 2019) (finding plaintiff adequately pleaded that his ability to breathe was

substantially impaired when he alleged that his asthma, caused by a respiratory allergy, resulted

in "medical emergencies including three hospitalizations over a three-month period").[3]

Of course, the Court agrees with Plaintiff that impairments that are either episodic or in

remission can constitute a disability within the meaning of the ADA.  Pl. Opp. at 14.  Under

EEOC regulations, impairments that are episodic or in remission may include, but are not limited

to, epilepsy, multiple sclerosis, cancer, hypertension, asthma, major depressive order, bipolar

disorder, and schizophrenia.  *See* 29 C.F.R. § 1630.2(j)(1)(vii), app.  Doubtless, some reactions

to vaccines can be severe enough in intensity, duration, frequency, or after-effects to rise to the

level of a disability under the ADA.  But the Court emphasizes that, on this record, no reasonable

factfinder could conclude that Plaintiff's reactions to the flu vaccine, at the time she requested an

accommodation, meet the definition of a disability.  Although not every showing of disability

---

[3] Plaintiff also argues that Defendant failed to accommodate by offering the "ineffective modification of the FluBlok
allergy test and FluBlok shot."  Pl. Opp. at 18.  However, the Court has already concluded that Plaintiff did not have
a qualifying disability at the time of Plaintiff's exemption request.

must be "akin to [an] episodic condition like epilepsy or an uncured condition in remission like cancer," *Morea*, 2017 WL 3393843, at *9, the evidence Plaintiff has put forward is insufficient to create a genuine question of material fact on this issue.

Because Plaintiff has not established that her reactions to the flu vaccine constituted a disability at the time of her requested accommodation, as required by the first prong of a prima facie case for failure to accommodate, the Court need not evaluate whether she has satisfied the remaining elements of this claim.

Accordingly, Defendant's motion for summary judgment is GRANTED as to Plaintiff's failure to accommodate claim.

### B. Disability Discrimination

In order to prevail on a claim for disability discrimination under the ADA, a burden-shifting analysis applies: (1) plaintiff must establish a prima facie case of discrimination; (2) if plaintiff meets her prima facie case, the burden of production shifts to defendant to offer non-discriminatory reasons for its decision; and (3) plaintiff then bears the burden to demonstrate that the articulated reasons are merely pretextual and that the reason is discrimination. *Heyman v. Queens Vill. Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999).

To establish a prima facie case, a plaintiff must demonstrate that: (1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job; and (4) plaintiff suffered from an adverse employment action because of [her] disability or perceived disability." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013).

As discussed above, Plaintiff has not met her burden to show that her allergy to the flu

vaccine constituted a disability under the ADA during the relevant time period.[4]  Nor does the record support the conclusion that Defendant regarded Plaintiff as disabled.  "When a [p]laintiff brings a claim on the basis . . . that [her] employer regarded [her] as disabled, 'the decisive issue is the employer's perception of his or her employee's alleged impairment.'"  *Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 633 (S.D.N.Y. 2014) (quoting *Giordano v. City of New York*, 274 F.3d 740, 748 (2d Cir. 2001)).   Defendant referred Plaintiff to Dr. Abdeldaim for the purpose of determining whether Plaintiff had an impairment that would exempt her from the IRP.  Def. Mem. at 25.  There is no evidence that when Defendant sent Plaintiff to Dr. Abdeldaim for evaluation, Defendant believed it was likely that Plaintiff had a medical condition which would qualify her for an exemption.

The Court agrees with Defendant that Plaintiff cannot establish that she suffered from or was regarded as suffering from a disability during the pertinent time period.  Because Defendant prevails on at least one element of a prima facie case for disability discrimination under the ADA, the Court need not decide whether Defendant met its burden to articulate a legitimate, non-discriminatory business reason for its actions.  *McMillan*, 711 F.3d at 125.

Accordingly, Defendant's motion for summary judgment as to Plaintiff's disability discrimination claim is GRANTED.

---

[4] Here, courts may look to whether the plaintiff was disabled at the time of the adverse employment action.  *See Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1994) (considering plaintiff's disability at the time of termination); *Hart v. N.Y Univ. Hosps. Ctr.*, No. 09 Civ. 5159, 2011 WL 4755368, at *5 (S.D.N.Y. Oct. 7, 2011) (same).  The adverse employment action occurred on February 9, 2018.  Accordingly, the Court's analysis about Plaintiff's disability remains unchanged because the Court need only consider Plaintiff's flu vaccine reactions before that date.

C.  Retaliation Claim

      1.  Legal Standard

"The ADA makes it unlawful for an employer to 'discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.'"  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (quoting 42 U.S.C. § 12203(a)).  Making a good faith request for an accommodation is a protected activity.  *Weixel*, 287 F.3d at 149.

On a motion for summary judgment on a retaliation claim,

> the plaintiff must first present sufficient evidence to make out a prima facie case, that is, evidence sufficient to permit a rational trier of fact to find (1) that she engaged in protected participation or opposition under [the ADA], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2011) (citation omitted).

A causal connection may be established "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).

      2.  Analysis

Plaintiff alleges that she engaged in a protected activity, by requesting an accommodation, and that Defendant retaliated against Plaintiff by threatening to terminate her. Compl. ¶¶ 65–68.  Defendant argues that there is no evidence of retaliation or any adverse

16

employment action.  Def. Mem. at 27.  The Court agrees with Defendant.

Plaintiff has raised a fact issue as to the first three elements of a prima facie retaliation claim.  As for the first and second prongs, Plaintiff engaged in a protected activity by requesting an accommodation that Defendant was aware of.  56.1 Stmt. ¶ 78.  As for the third prong, although Defendant told Plaintiff she would be terminated for failure to comply with the flu shot requirement, Compl. ¶ 35; 56.1 Stmt. ¶¶ 132–33, "the threat of disciplinary action, without more, does not constitute an adverse employment action."  *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 407 (S.D.N.Y. 2014).  However, in addition to the threat of termination, Plaintiff was also suspended with pay until her appointment with Dr. Abdeldaim.  56.1 Stmt. ¶ 144. "[S]uspension with pay may, in some circumstances, rise to the level of an adverse employment action."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).  To determine whether suspension with pay constitutes an adverse employment action, a court may consider whether "the employer has simply applied reasonable disciplinary procedures to an employee or if the employer has exceeded those procedures and thereby changed the terms and conditions of employment."  *Id*.  Here, there is a genuine dispute of material fact as to whether the threat of termination, coupled with Plaintiff's suspension with pay, constitutes an adverse employment action.

Based on the record, however, the Court concludes there is no genuine dispute that Defendant lacked "a retaliatory motive [that] played a part" in the alleged adverse employment action.  *Lovejoy-Wilson*, 263 F.3d at 223 (citation omitted).  First of all, exemption requests were deidentified, meaning that the Review Board did not have access to the employee's name or other identifying information during the review process.  56.1 Stmt. ¶ 51; Phillips Decl. ¶ 27. Additionally, Plaintiff testified that her direct supervisors "were trying to help [her] in any way

17

they could to get answers to her questions that [she] was not getting," Pl. Dep. Tr. at 203:2–5, and that she believed that her department "had [her] best interest at heart" throughout the process. *Id*. at 206:14–17. Plaintiff described the Review Board as "confused" and as lacking a "strong workflow in process," and acknowledged that the flu vaccine requirement was part of a new policy. *Id.* at 217:2–10. Other employees had similar, negative experiences with the Review Board relating to the flu vaccine. *Id*. at 65:13–19, 211:12–212:9, 222:22–223:7. Members of the Review Board conceded that significant miscommunications occurred relating to Plaintiff's exemption request. *See* Salvati Dep. Tr. at 143:18–25 ("[T]here was some question whether or not Ms. Norman had an appointment, didn't keep an appointment, had declined possible testing."); *id*. at 149:8–11 ("Q: [D]o you know whether she was actually subjected to termination? A: I do not"). However, none of the actions taken by Defendant during the relevant time period, including the referral to Dr. Abdeldaim and referral to human resources for failure to comply with the IRP, evince animus on Defendant's part.

Accordingly, because there is no genuine dispute that Defendant did not act with animus, Defendant's motion is GRANTED as to Plaintiff's retaliation claim under the ADA.

III.   <u>State Law Claims</u>

In addition to her federal claims, Plaintiff asserts disability and retaliation claims under the NYSHRL and NYCHRL. The Court declines to exercise supplemental jurisdiction over such claims.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "For purposes of

section 1367(a), claims form part of the same case or controversy if they derive from a common nucleus of operative fact." *Shahriar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (internal quotation marks and citation omitted). "In determining whether two disputes arise from a common nucleus of operative fact, we have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped or the federal claim necessarily brought the facts underlying the state claim before the court." *Actman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (internal quotation marks, citation, and alterations omitted).

Here, the Court has original jurisdiction over Plaintiff's federal claims under the ADA. The state law causes of action arise from a common nucleus of operative fact, as they all stem from Defendant's alleged discrimination and retaliation against Plaintiff on the basis of her alleged disability. However, even where a plaintiff's state law claims satisfy the "same case or controversy" requirement of § 1367(a), a court can decline to exercise supplemental jurisdiction over them pursuant to § 1367(c). The Court declines to do so here.

"Where section 1367(a) is satisfied, the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." *Shahriar*, 659 F.3d at 245 (internal quotation marks, citation, and alteration omitted). Section 1367(c)'s categories are: "(1) the claim raises a novel or complex issue of [s]tate law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Here, the first and third categories of § 1367(c) apply. The Court has dismissed the only

claims over which it has original jurisdiction, and this action raises complex issues of state law.

Before declining supplemental jurisdiction, however, the Court must also consider whether values of judicial economy, convenience, fairness, and comity would be disserved by such a decision. "[W]here at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values . . . [of] economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004).

Defendant urges the Court to address and enter summary judgment on Plaintiff's NYSHRL and NYCHRL claims. Def. Mem. at 27–28. Defendant, however, does not state why doing so would promote the values of economy, convenience, fairness, and comity. *See id.*

Moreover, the Court is further persuaded to decline the exercise of supplemental jurisdiction because "the law of New York in regard to relative state and federal disability claim analysis is still developing." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 256 (E.D.N.Y. 2015). For that reason, "the Court of Appeals for the Second Circuit has recommended that where there is an absence of any continuing basis for federal question jurisdiction under the ADA, the appropriate analytic framework to be applied to discrimination claims based on a disability as defined by New York state and municipal law is a question best left to the courts of the State of New York." *See Brantman v. Fortistar Capital, Inc*., No. 15 Civ. 4774, 2017 WL 3172864, at *12 (S.D.N.Y. July 22, 2017) (collecting cases) (internal quotation marks, citation, and alterations omitted).

The Court concludes, therefore, that the balance of factors counsels in favor of declining supplemental jurisdiction. Allowing Plaintiff to pursue her state law claims in state court would "avoid 'needless decisions of state law' by this Court, which also promotes the interests of

comity and justice." *Moran v. Tryax Realty Mgmt., Inc.*, No. 15 Civ. 8570, 2016 WL 3023326, at *4 (S.D.N.Y. May 23, 2016) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).  The Court cannot "discern [any] extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a 'surer-footed reading of applicable law.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (quoting *Gibbs*, 383 U.S. at 726).  This is true even where, as here, the parties have already completed discovery.  *See Brantman*, 2017 WL 3172864, at *12 (declining to exercise supplemental jurisdiction over any state law claims because the federal claims did not survive summary judgment); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").  The Court, therefore, declines to exercise supplemental jurisdiction over the Plaintiff's state law causes of action pursuant to § 1367(c).

Accordingly, Plaintiff's claims under the NYSHRL and the NYCHRL are DISMISSED without prejudice to renewal in state court.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment on Plaintiff's ADA claims is GRANTED.  Plaintiff's claims arising under the NYSHRL and the NYCHRL are DISMISSED without prejudice to refiling in state court.

The Clerk of Court is directed to terminate the motion at ECF No. 46 and close the case.

SO ORDERED.

Dated: September 30, 2020
       New York, New York

_____
ANALISA TORRES
United States District Judge